624 A.2d 200

**COMMONWEALTH of Pennsylvania,**

**v.**

**David Allen LONG, Appellant.**

Superior Court of Pennsylvania.

Argued Feb. 19, 1993.

Filed April 26, 1993.

Robert D. Sebastian, Pittsburgh, for appellant.

Scott A. Bradley, Asst. Dist. Atty., Pittsburgh, for Com. appellee.

Before KELLY, JOHNSON and HESTER, JJ.

JOHNSON, Judge:

David Allen Long appeals from the judgment of sentence entered following his convictions for Involuntary Manslaughter, Homicide by Watercraft, Recklessly Endangering Another Person, and Reckless Operation of Watercraft. We affirm.

On May 12, 1991, Mark Yates, the victim, went with his friends Rich Meyers, Melissa and Melinda Folmer, Heather Adams and Matt Austin to an abandoned pier on the shore of the Ohio River, a few miles north of the city of Pittsburgh, Pennsylvania. During that time, the victim quickly consumed two to three cans of beer. Shortly thereafter, a power boat operated by Long stopped offshore directly in front of the group of friends. Rich and Melinda swam out to the boat and climbed on board. The boat then headed off in the direction of Pittsburgh. A short while later, the boat returned with Rich and Melinda and the two friends swam safely to shore.

The victim and Melissa then attempted to swim out to the boat. The victim swam closer to Long's boat than did Melissa. As the victim approached the boat and attempted to climb on board, Long pulled the boat away from him. This happened three times. Long then started making circles in the water in front of the victim causing waves 3–5 feet in height which swept over the victim's head. Long caused the boat to circle several times, causing the victim to go under the water. When the victim was experiencing difficulty maintaining his head above the water, he started screaming for help. In response, Long and his companions on the boat started throw-

ing beer cans at the victim. Finally, Long ceased circling and sped away, ignoring the victim's cries for help.

After the boat departed from the scene, the victim's friends entered the water and attempted to rescue him. Rich Meyers reached the victim but was unsuccessful in his efforts to save him. The victim sank beneath the water and was drowned.

The police were summoned to the scene and the victim's friends described the events that led to the victim's drowning and identified Long's boat. The police subsequently ascertained Long's identity. Long and his companions on the motor boat were summoned to the McKees Rocks police station the day after the incident to give statements about the victim's death. Long was then arrested and charged with regard to the victim's death.

Following a bench trial before the Honorable Robert E. Dauer, Long was convicted on the present charges. Post-trial motions were denied and this appeal followed.

Long presents four issues for our review:

1. Whether the evidence presented at trial was sufficient to prove that Long's actions were the legal cause of the victim's death.

2. Whether the trial court erred in admitting a videotape which depicted the operation of Long's boat.

3. Whether the trial court erred in admitting the testimony of the Commonwealth expert Richard Bradshaw.

4. Whether Long's conviction can be sustained in light of the contradictory evidence presented by the witnesses at trial.

First, Long contends that the evidence presented at trial was insufficient to establish that his actions were the legal cause of the victim's death. We disagree.

Our standard, in reviewing the sufficiency of the evidence, is "whether viewing the evidence in the light most favorable to the Commonwealth, as verdict winner, and drawing all proper inferences favorable to the Commonwealth, the [fact finder] could reasonably have determined all elements of the crime to have been established beyond a reasonable doubt.

*Commonwealth v. Badman,* 398 Pa.Super. 315, 325–326, 580 A.2d 1367, 1372 (1990). Both direct and circumstantial evidence can be considered when assessing the sufficiency of the evidence. *Commonwealth v. French,* 396 Pa.Super. 436, 578 A.2d 1292 (1990). It is in light of this standard that we will address Long's contentions.

First, Long divides his attack on the sufficiency of the evidence into several discrete sub-arguments, each of which attempts to refute the Commonwealth's position that Long's actions started a chain of causation which resulted in the victim's death. It is undisputed that the Commonwealth must prove a *direct* causal relationship between the acts of a defendant and the victim's death. *Commonwealth v. Barnhart,* 345 Pa.Super. 10, 28, 497 A.2d 616, 626 (1985), *appeal denied,* 517 Pa. 620, 538 A.2d 874, *cert. denied, Barnhart v. Pennsylvania,* 488 U.S. 817, 109 S.Ct. 55, 102 L.Ed.2d 34 (1988).

Our supreme court has long held that establishing causation under a tort theory is insufficient to impose criminal liability upon a person. *Commonwealth v. Root,* 403 Pa. 571, 575, 170 A.2d 310, 311 (1961). Rather, the Commonwealth must prove that the defendant's conduct was so directly and substantially linked to the actual result as to give rise to the imposition of criminal liability. *Commonwealth v. Rementer,* 410 Pa.Super. 9, 18, 598 A.2d 1300, 1304 (1991); 18 Pa.C.S. § 303. In *Rementer,* we set out a two part test which requires that: (1) the defendant's conduct must be an antecedent but for which the result in question would not have occurred, or that the victim's death was not entirely attributable to other factors, and (2) the results of the defendant's actions cannot be so extraordinarily remote or attenuated that it would be unfair to hold the defendant criminally responsible. *Id.* at 19–20, 598 A.2d at 1305.

In order to meet the requirements of the first part of the test, the defendant's conduct need not be the sole cause of the victim's death in order to establish a causal connection. *Id.* Criminal responsibility may be properly assessed against

an individual whose conduct was a direct and substantial factor in producing the death even though other factors combined with that conduct to achieve the result. *Commonwealth v. Skufca,* 457 Pa. 124, 321 A.2d 889, *appeal dismissed,* 419 U.S. 1028, 95 S.Ct. 510, 42 L.Ed.2d 304 (1974). The second part of the test is met when the victim's death is the natural or foreseeable consequence of the defendant's actions. *Rementer, supra; Commonwealth v. Paquette,* 451 Pa. 250, 301 A.2d 837 (1973). Where the fatal result was an unnatural or obscure consequence of the defendant's actions, justice would prevent us from allowing the result to have an impact upon a finding of the defendant's guilt. *Rementer,* 410 Pa.Super. at 23, 598 A.2d at 1306–1307.

Here, the immediate cause of the victim's death was by drowning. In his first sub-argument, Long asserts that it was the victim's own entry into the water, after consuming alcohol, which caused his death. This argument is not supported by the record.

Testimony presented by various witnesses reflects that the victim was a better than average swimmer and that prior to Long circling in front of the victim with his boat, the victim had experienced no difficulty swimming. The medical examiner's report indicated that there was unabsorbed alcohol in the victim's stomach and that the victim's blood alcohol level was only about 0.02%. Further, there was no testimony indicating that the victim displayed any signs of intoxication or that he was experiencing any motor instability or incapacity, prior to Long's actions with the boat.

However, even if the victim had been intoxicated upon entering the water, contributory negligence of the victim is not a defense in a criminal action. *See, e.g., Commonwealth v. Heck,* 341 Pa.Super. 183, 213, 491 A.2d 212, 227 (1985) (Contributory negligence is not a defense to a charge of homicide by vehicle). After a thorough review of the record, we conclude that the mere fact that the victim entered the water after consuming alcohol is insufficient to relieve Long from the

responsibility for his actions, which began the chain of causation resulting in the victim's death.

 In his second sub-argument, Long contends that since the victim was still alive and crying out for help at the time that Long's boat left the scene, his actions could not have caused the victim's death. Long asserts that the victim's death was solely due to the rescue effort on the part of Rich Meyers. We find no merit in these contentions.

The courts of this Commonwealth have held on numerous occasions that a defendant can be held responsible for the death of a victim despite the fact that the victim does not die immediately from the defendant's actions but, rather, dies from the foreseeable consequences of those actions. *See, e.g., Commonwealth v. Rementer, supra; Commonwealth v. Paquette, supra; Commonwealth v. Cheeks,* 423 Pa. 67, 223 A.2d 291 (1966); *Commonwealth v. Skufca, supra.*

In *Commonwealth v. Skufca, supra,* a mother went out for a social evening, leaving her two small children, aged three years and ten months, alone and locked in the bedroom of their apartment. During the course of the mother's absence, a fire started in the building. The children suffocated in the fire, despite rescue efforts, due to the manner in which the door was fastened. There, we upheld the mother's conviction on charges of involuntary manslaughter, holding that while the direct cause of the children's death was smoke inhalation, the legal cause of the children's death was the unlawful conduct by mother in leaving her children unattended in circumstances that prevented their rescue from the fire. *Skufca* at 133, 321 A.2d at 894. We stated in response to the mother's allegation that she was not the legal cause of the children's death, "it has never been the law of this Commonwealth that criminal responsibility must be confined to a sole or immediate cause of death." *Skufca* at 132, 321 A.2d at 894.

Similarly in *Commonwealth v. Cheeks, supra,* the defendant stabbed the victim, causing an injury which required surgical intervention. After surgery, the victim became disoriented and continued to pull out the tubes placed in his stomach to

prevent gastric contents from being regurgitated and inhaled. The victim subsequently inhaled a large amount of gastric fluid and died due to suffocation and cardiac arrest. There, the defendant claimed that his act of stabbing the victim was not the cause of the victim's death. This Court upheld the defendant's murder conviction, stating that the stabbing started a chain of causation which resulted in the surgery and its complications. *Cheeks* at 73–74, 223 A.2d at 294. We held, in that case, that the fact that the patient became disoriented and pulled out the gastric tubes himself was not such an intervening and independent act that it would break the chain of causation between the stabbing and the death. *Cheeks* at 73–74, 223 A.2d at 294.

In the present case, like the above cited cases, the defendant performed actions which imperiled the victim, but did not immediately result in his death. The wakes formed by the circling boat washed over the victim's head, causing him extreme difficulty in staying afloat. At the time that Long left the scene, the victim was, according to the Commonwealth's swimming expert's testimony, a "person in distress." N.T., December 10, 1991 at 618. The expert estimated that once a person is in distress, unless a rescue takes place, drowning will occur within approximately three to ten minutes, depending on a person's size. *Id.* at 622–624. The victim in this case, despite rescue efforts, did drown shortly after Long left the scene. While the rescue effort may have been unsuccessful or even poorly performed, we are unable to conclude that it constituted an independent or intervening act sufficient to break the chain of causation begun by Long.

■ In his third sub-argument challenging the trial court's holding that his acts were the legal cause of the victim's death, Long maintains that since the medical examiner listed the cause of the victim's death as an accidental drowning, the Commonwealth failed to establish that the victim's death was the result of any wanton or negligent act by Long, whether lawful or unlawful. We disagree.

In this claim, Long is contending that the Commonwealth failed to prove a required element of the crime of Involuntary Manslaughter. This statute states:

**18 Pa.C.S. § 2504. Involuntary manslaughter**

(a) **General rule.**—A person is guilty of involuntary manslaughter when as a direct result of the doing of an unlawful act in a reckless or grossly negligent manner, or the doing of a lawful act in a reckless or grossly negligent manner, he causes the death of another person.

Recklessness is defined at 18 Pa.C.S. § 302(b)(3):

A person acts recklessly with respect to a material element of an offense when he consciously disregards a substantial and unjustifiable risk that the material element exists or will result from his conduct. The risk must be of such a nature and degree that, considering the nature and intent of the actor's conduct and the circumstances known to him, its disregard involves a gross deviation from the standard of conduct that a reasonable person would observe in the actor's situation.

Criminal negligence is defined at 18 Pa.C.S. § 302(b)(4):

A person acts negligently with respect to a material element of an offense when he should be aware of a substantial and unjustifiable risk that the material element exists or will result from his conduct. The risk must be of such a nature and degree that the actor's failure to perceive it, considering the nature and intent of his conduct and the circumstances known to him, involves a gross deviation from the standard of care that a reasonable person would observe in the actor's situation.

This Court has explained under what circumstances a conviction for Involuntary Manslaughter may be sustained with regard to a boating incident in *Commonwealth v. Gilliland,* 281 Pa.Super. 354, 356, 422 A.2d 206, 207 (1980):

In order to sustain a conviction for Involuntary Manslaughter, the appellant's driving conduct must evidence a disregard for human life or an indifference to consequences.

In the present case, the fact that the medical examiner testified that the cause of death was by accidental drowning is not inconsistent with Long's convictions for Involuntary Manslaughter. The medical examiner testified that he had no knowledge of the circumstances of the victim's death and that the autopsy revealed that death was by drowning without an indication that the victim was forcibly held under the water. N.T., December 10, 1991, at 640–641.

Other testimony at trial reveals the circumstances under which the victim's drowning took place. The manner in which Long operated his boat, his observance of the effect of the wakes on the victim, and his acts of throwing beer cans at a person crying out for help before speeding away from the scene, are all acts which evidence Long's disregard for human life and his indifference to the consequences of his actions. We, therefore, conclude that the fact that the medical examiner found no evidence of foul play with regard to the drowning is not relevant to the circumstances of this particular case.

In his fourth attack on whether his actions were the legal cause of the victim's death, Long asserts that the lack of any physical contact between his boat and the victim precludes his conviction on the charge of Homicide by Watercraft. We find this argument to be meritless.

Homicide by Watercraft is defined at 30 Pa.C.S. § 5502.2 as:

Any person who unintentionally causes the death of another person while engaged in the violation of any provision of this title or regulation promulgated under this title applying to the operation or equipment of boats or watercraft, except section 5502 (relating to operating watercraft under influence of alcohol or controlled substance), commits homicide by watercraft, a misdemeanor of the first degree when the violation is the cause of death.

Nowhere in this statute is physical contact required between a watercraft and the victim's body in order for liability to attach. What is required, in order for a person to be held responsible under this section, is the violation of another

provision under The Fish Act which causes the death of another person. The Commonwealth has met this burden in the present case. Two violations under the Fish Act include reckless and negligent operation of a watercraft. Reckless operation of a watercraft involves a gross deviation from the standard of care that a reasonable operator of a watercraft should observe under the circumstances. 30 Pa.C.S. § 5501(a). Negligent operation of a watercraft involves a deviation from the ordinary standard of care that a reasonable operator of a watercraft should observe under the circumstances. 30 Pa.C.S. § 5501(b).

Our review of the record supports the findings by the trial court that Long's operation of the boat was "reckless, conscious, willful, wanton, and grossly negligent." Trial court opinion at 8. Long's acts of stopping and starting the boat so as to pull out of the reach of the victim and then causing large waves and wakes that continued to wash over the victim's head constituted behavior sufficient to satisfy the requirements of reckless behavior under The Fish Act. 30 Pa.C.S. § 5501(a). We find Long's assertion that his boat must have sustained physical contact with the victim in order to sustain his conviction of Homicide by Watercraft to be wholly meritless.

As we are satisfied that Long's acts were indeed the legal cause of the victim's death, we now turn to Long's second argument. Long contends that the trial court erred in admitting the videotape of the operation of Long's boat which was made by Officer James Ammon of the Fish Commission. Long argues that the videotape should be excluded because it was not representative of the boat's action at the time the incident in question occurred. We disagree.

Long argues that the admission of the videotape violates the standard articulated by our supreme court in *Semet v. Andorra Nurseries*, 421 Pa. 484, 488–489, 219 A.2d 357, 360 (1966). In that case, the court stated:

The admission of photographs is a matter largely within the discretion of the trial Judge. A photograph must be verified either by the testimony of the person who took it or

by another person with sufficient knowledge to state that it fairly and accurately represents the object or place reproduced as it existed at the time of the accident, or if there is a difference or change, the difference or change is specifically pointed out and is readily capable of being clearly understood and appreciated by the jury.

Contrary to Long's assertions, we conclude that the admission of the videotape, in this case, clearly complies with the requirements of *Semet*. Here, the videotape was verified by Ammon, the person who made the tape. Ammon testified that while the videotape accurately depicted the boat and the scene in question, the movements of the boat in the water were not designed to recreate the accident but were, rather, examples of different movements of the boat on the water in order to show how a wake or waves might be created by that particular craft. The videotape was never represented to the trial court as an exact recreation of the incident in question. This fact was clearly understood by the trial court, which stood as fact finder, in this case. We, therefore, conclude that Long's allegations of error on the part of the trial court for its failure to comply with the *Semet* requirements are meritless.

■ Moreover, the videotape, while not recreating the scene of the victim's death, was relevant to support the Commonwealth's theory that the waves and wake which Long's boat was capable of creating could cause a swimmer to experience distress and become unable to keep afloat. *See, e.g., Commonwealth v. Henry*, 524 Pa. 135, 159, 569 A.2d 929, 940 (1990) (admission of photographs of murder victim was proper as they supported the Commonwealth's theory that the victim had been tortured); *Commonwealth v. DeHart*, 512 Pa. 235, 516 A.2d 656 (1986), *cert. denied*, 483 U.S. 1010, 107 S.Ct. 3241, 97 L.Ed.2d 746 (1987) (photographs depicting blood stained door of victim's cabin were admissible as relevant to the Commonwealth's theory that the victim was ambushed as he entered the cabin).

■ The admission of photographic or videotaped evidence is always within the sound discretion of the trial court and will

not be reversed absent an abuse of that discretion. *Commonwealth v. Stark,* 363 Pa.Super. 356, 526 A.2d 383 (1987), *appeal denied,* 517 Pa. 622, 538 A.2d 876 (1988). As Long has presented no evidence that the trial court abused its discretion with regard to the admission of the videotape, we reject this argument.

Third, Long alleges that the trial court erred in admitting the testimony of the Commonwealth's expert, Richard Bradshaw, because Bradshaw was not qualified as an expert on boating. We conclude that Long misapprehends the purpose for which Bradshaw's testimony was offered at trial and we, therefore, reject this allegation of error.

In Pennsylvania, a liberal standard for the qualification of an expert prevails. Generally, if a witness has any reasonable pretension to specialized knowledge he may testify and the weight to be given to his evidence is for the fact finder. *Commonwealth v. Gonzalez,* 519 Pa. 116, 128, 546 A.2d 26, 31 (1988). The determination of whether a person is qualified as an expert in this particular field is left to the discretion of the trial judge, and will be upheld absent an abuse of that discretion. *Commonwealth v. Young,* 524 Pa. 373, 389, 572 A.2d 1217, 1225 (1989).

Here, the Commonwealth offered Bradshaw as an expert witness on the human physiology of swimming and drowning and on how various wakes would affect a swimmer. N.T., December 10, 1991, at 585. Bradshaw testified as to his qualifications in that area, to which Long offered no objection. The expert's testimony was used to explain the effect of the type of wakes generated by Long's boat on a swimmer. The expert did not attempt to explain the hydrodynamics of powerboats or why or how the wakes in question were created. Rather, the expert viewed the videotape of Long's boat and the various wakes that it could possibly create and explained the effect that those types of wakes could have on a swimmer. Moreover, the purpose for which the expert's testimony was to be utilized was clearly understood by the trial court in its role as fact finder. The court stated:

... Bradshaw's testimony as an expert was not offered for the purposes of explaining the operation of a power boat. Rather, it was offered for the purpose of explaining how wakes effect [sic] a swimmer. This area of Bradshaw's expertise, as an aquatics coach for 30 years with degrees in physical education and physiology, were submitted to the Court without objection and Bradshaw's testimony was properly supported by other evidence of record.

Trial court opinion at 9.

We, therefore, are unable to conclude that the trial court abused its discretion in the admission of the expert's testimony.

In his fourth and final allegation of error, Long alleges that the testimonial evidence presented at trial was insufficient to sustain his conviction due to inconsistencies in the testimony of the various witnesses for the Commonwealth. We disagree.

A mere conflict in testimony does not render evidence insufficient. *Commonwealth v. Rankin*, 441 Pa. 401, 272 A.2d 886 (1971). The fact that there are some inconsistencies in the witnesses' testimony is not alone sufficient to destroy the Commonwealth's case or to render the evidence insufficient to support the verdict. *Commonwealth v. Sample*, 321 Pa.Super. 457, 468 A.2d 799 (1983). While there were some inconsistencies in the testimony of the various witnesses presented at trial, Long had the opportunity to fully cross-examine all witnesses presented. Thereafter, the determination of the credibility of those witnesses was the function for the fact finder, who was free to believe all, part, or none of the evidence. *Commonwealth v. Maute*, 336 Pa.Super. 394, 485 A.2d 1138 (1984).

After viewing the evidence, in the light most favorable to the Commonwealth, as verdict winner, we conclude that the Commonwealth has established the elements of the crimes in question beyond a reasonable doubt. We, therefore, dismiss Long's fourth claim as meritless.

Accordingly, in light of the foregoing, we affirm the judgment of sentence.

Judgment of Sentence Affirmed.