## Gross v. Laver

C.P. of Delaware County, no. 98-08236.

*John S. Bagby,* for plaintiffs.
*Paul E. Peel,* for defendants.

BRADLEY, *J.,* Feburary 26, 2002—Defendants, Arthur T. Laver M.D. and Pavilion Ob-Gyn Ltd., appeal from the entry of judgment in favor of plaintiffs, Lori L. and John K. Gross, husband and wife.

This medical malpractice action arises out of the care rendered by Dr. Laver during surgery performed on Lori Gross. Dr. Laver, an obstetrician/gynecologist, was treating Lori Gross for infertility. At his recommendation, she underwent a diagnostic laparoscopy on June 5, 1996, to rule out endometriosis as a cause of infertility. During the procedure, a sharp-pointed instrument, known as a trocar, was used by Dr. Laver to perforate the wall of plaintiff's abdomen. It is through the trocar that the laparoscope can be inserted. After insertion of the trocar, Dr. Laver observed intra-peritoneal bleeding on Mrs. Gross' left side from a venous source. Mrs. Gross' left iliac vein had been lacerated by the trocar. Because the bleeding was uncontrolled, Dr. Laver performed an emergency laparatomy during which the bleeding point area was compressed until a vascular surgeon was available to repair the laceration. As a result of Dr. Laver's alleged negligence, Mrs. Gross claims to have sustained injuries including neurological damage and deficit, disfigurement, continuing pain, disability and loss of income.

After numerous continuances at the parties' requests, this matter was called for trial on June 25, 2001. After a three-day trial, the jury rendered a verdict in favor of Mrs. Gross in the amount of $1.2 million and in favor of Mr. Gross on his claim for loss of consortium in the amount of $100,000. Post-trial motions filed by the defendants were denied. Judgment was entered in favor of plaintiffs. This appeal followed.

The sole issue presented on this appeal is whether the trial court committed prejudicial error by precluding the defendants from presenting a surveillance videotape of Mrs. Gross.

At trial, defendants sought to introduce into evidence a surveillance videotape of Lori Gross. It purportedly showed her engaging in activities which she had previously testified to having difficulty with in her deposition. Plaintiffs objected to admission of the surveillance tape on numerous grounds, including untimely production. Meanwhile defendants filed a motion in limine which sought to preclude an instructional videotape of a laparoscopy performed by plaintiff's expert, Richard Soderstrom M.D. Essentially, defendants objected to this videotape for the identical reasons that plaintiffs objected to admission of defendants' surveillance tape. After pointing out the logical inconsistency of the parties' positions, the court gave defendants a choice: Either both videotapes would be admitted or neither videotape would be admitted. Defendants chose the latter and now claim the trial court committed prejudicial error by precluding defendants from presenting the surveillance videotape of Mrs. Gross.[1]

"The admission of photographic or videotaped evidence is always within the sound discretion of the trial court and will not be reversed absent an abuse of that discretion." *Commonwealth v. Long,* 425 Pa. Super. 170, 183-84, 624 A.2d 200, 207 (1993), *alloc. denied,* 535 Pa. 645, 633 A.2d 150 (1993). We believe the preclusion of the surveillance videotape was proper for the following reasons.

---

1. It is of interest that defendants never offered the edited videotape into the record nor described for the record what the videotape showed. It is then impossible for a trial court to determine what effect, if any, the surveillance evidence would have had.

First, defendants never forwarded in a timely manner, an unedited version of the surveillance videotape. Indeed, to date, defendants have never provided or offered to provide the unedited version of the entire surveillance videotape, the identity of the investigator who shot the videotape, the investigator's contemporaneous notes, the time span of the videotape, or any other matter in the investigator's report or file.

A review of the discovery history reveals that although information regarding surveillance videotapes was clearly sought by plaintiffs, none was forthcoming from defendants until approximately one month before trial. Plaintiffs' interrogatory number thirty-four asked defendant to "[s]tate whether or not the defendant knows of the existence of any videotape, photograph, or any other recording made during, in relation to, or as a result of the treatment, surgery, or examination which is the subject matter of plaintiffs' complaint. *Plaintiffs' Interrogatories Addressed to Defendants Arthur T. Laver M.D. and Pavilion Ob-Gyn Ltd.,* dated February 9, 2000, exhibit A to plaintiffs' memorandum of law in support of plaintiffs' response to the motion for post-trial relief of defendants, Arthur T. Laver M.D. and Pavilion Ob-Gyn Ltd. On that same date, plaintiffs requested the production of "the entire contents of any investigation file or files of the defendants, defendants' attorney or other representative concerning the subject matter of this action . . . , [a]ny and all accident or incident reports concerning this accident, incident or occurrence, including but not limited to, any submitted by plaintiff or filled out, prepared by or under the direction of any employees, agents, servants, contractors or independent contractors of the de-

fendants, and [a]ny and all videotapes, photographs, x-ray films, motion picture, diagrams or drawings of any person, place or thing which is directly or indirectly related to the accident, incident or occurrence which is [sic] subject of the plaintiffs' cause of action. . . ." Plaintiffs' request for production of documents addressed to defendants Arthur T. Laver M.D. and Pavilion Ob-Gyn Ltd., nos. 1, 6 and 7, attached as exhibit B to plaintiffs' memorandum of law in support of plaintiffs' response to the motion for post-trial relief of defendants Arthur T. Laver M.D. and Pavilion Ob-Gyn Ltd.

No surveillance tapes or investigative materials were identified or produced in response to these discovery requests. Nor were any such materials disclosed in defendants' pretrial memorandum filed on January 10, 2001. (Trial was delayed until June 25, 2001, at the parties' request.) Only on May 23, 2001, did defendants forward to plaintiffs an edited version of a surveillance videotape purportedly taken of Lori Gross on April 16, 2001. Not until June 21, 2001, only four days before commencement of the trial in this action, did defendants provide an amended pretrial statement which informed this court as well as plaintiffs of defendants' intent to use the surveillance videotape at trial.

In *Dominick v. Hanson,* 753 A.2d 824 (Pa. Super. 2000), the Pennsylvania Superior Court held that surveillance films constitute work product and must be disclosed in response to discovery requests. Defendants neither timely answered the pertinent discovery nor supplemented timely the nondisclosure once the videotape was obtained in late April 2001. Pa.R.C.P. 212.2(a)(4) also requires a party to list the surveillance

tape as a potential trial exhibit. A mere four days before trial is when defendants amended their pretrial statement to list the surveillance videotape as a potential exhibit. This was obviously untimely considering that defendants failed to provide any investigative material identifying the individual who shot the videotape or any information identifying the surrounding circumstances under which the videotape was shot. These failures on the part of defendants prejudiced plaintiffs by preventing them from obtaining a sufficient time before trial the necessary information to challenge the authenticity and relevancy of the videotape. These failures were especially prejudicial given the fact that the videotape provided to plaintiffs was edited.

Preclusion of the videotape is controlled by the decision of the Pennsylvania Superior Court in *Bindschusz v. Phillips,* 771 A.2d 803 (Pa. Super. 2001), *alloc. denied,* 567 Pa. 754, 790 A.2d 1012 (2001). Therein, the trial court precluded the defense from using a surveillance videotape at trial because its existence was never disclosed until plaintiff presented his case in chief. In the instant case, plaintiff turned over the surveillance videotape one month prior to trial and listed it as a trial exhibit in an amended pretrial statement filed four days before trial. These distinctions however do not mandate a different result because defendants in the instant case never turned over an unedited videotape and provided no information surrounding the taking of the videotape. As the court in *Bindschusz* reasoned:

"Every need to provide information must be balanced against the need to withhold it. The need to know is but

the converse of the need to keep secret. The only time there will be substantial need to know about surveillance pictures will be in those instances where there would be a major discrepancy between the testimony the plaintiff will give and that which the films would seem to portray. By the same token this would be the only instance where there is a substantial need to withhold that information from plaintiff's counsel. If the discrepancy would be the result of the plaintiff's untruthfulness, the substantial need for his counsel to know of the variance can hardly justify making the information available to him. On the other hand, if the discrepancy would result from misleading photography, the necessary background information should be made available to the plaintiff's attorney so the fraud can be exposed. It goes without saying that the means to impeach should not be the exclusive property of the defense. Any rule to be formulated, therefore, must balance the conflicting interests of the plaintiff against the conflicting interests of the defendant and protect both insofar as it is possible to do so. In addition, the objectives of the discovery rules must be kept in mind so that a just and speedy determination of cases can be obtained.

"I conclude these purposes can best be achieved by requiring the defense to disclose the existence of surveillance films or be barred from showing them at trial. If the defense has films and decides it wants to use them, they should be exhibited to the plaintiff and his counsel. If filed, supplementary interrogatories should be answered giving full information as to the details surrounding the taking of these pictures." *Bindschusz, supra,* 771 A.2d at 811.

Defendants claim they were extremely prejudiced because defense counsel mentioned the videotape in her opening statement and then failed to show it at trial. Defense counsel however addressed this dilemma in her closing argument. (June 27, 2001, N.T. pp. 166-67.) She explained that unanticipated events occur during trial and that she had to make a choice about what evidence to use. The operative word is choice. Not only did defense counsel choose to refer to the disputed videotape in her opening statement, she also chose its preclusion by refusing to withdraw her objection to plaintiffs' use of a videotape (untimely produced) demonstrating a laparoscopy. Her trial strategy should not be viewed as trial court error.

Finally, one simply cannot accept defendants' bold assertion that the sole reason for a verdict in plaintiffs' favor was the court's preclusion of the videotape. The jury heard persuasive expert testimony in support of plaintiffs' case. Plaintiff and her husband both testified to her continuing physical, emotional and financial problems stemming from her original surgery. She was subjected to rigorous cross-examination. To say that the failure to allow the videotape into evidence solely accounted for the verdict in favor of plaintiffs is without basis. Moreover, *Bindschusz, supra,* mandates the preclusion of the edited videotape regardless of its effect on the outcome of the trial.