**Commonwealth v. Baucage**

*Michael Cammarano,* for defendant/appellant.

*Alisa Hobart, assistant district attorney,* for Commonwealth/appellee.

BUCCI, *J.,* April 24, 2008—

## PROCEDURAL HISTORY

On July 13, 2006, the defendant was found guilty by a jury of two counts of aggravated assault,[1] three counts of recklessly endangering another person,[2] possessing instruments of a crime,[3] and conspiracy to commit recklessly endangering another person.[4] On July 17, 2006, he pled guilty to prohibited possession of a firearm.[5] He was subsequently sentenced on that same date to an aggregate sentence of nine to 20 years. The defendant, by and through his attorney, filed a notice of appeal on August 16, 2006. On August 17, 2006, this court ordered the defendant to file a concise statement of errors com-

---

1. 18 Pa.C.S. §2702(a)(1); 18 Pa.C.S. §2702(a)(4).
2. 18 Pa.C.S. §2705.
3. 18 Pa.C.S. §907(a).
4. 18 Pa.C.S. §903(a)(1).
5. 18 Pa.C.S. §6105(a)(1).

plained of on appeal. However, appellant's counsel failed to file a timely concise statement, waiving all issues on appeal, and appellant's appeal was dismissed by the Superior Court on October 12, 2006.

On December 12, 2006, appellant filed a pro se motion to reinstate appeal. This court treated appellant's motion as a petition for post conviction collateral relief and appointed counsel. On January 23, 2008, appellant filed an amended PCRA petition requesting reinstatement of his direct appeal rights. On January 25, 2008, this court granted appellant's petition, granting him leave to appeal nunc pro tunc.

On February 25, 2008, appellant filed a notice of appeal to the Pennsylvania Superior Court. On March 3, 2008, this court ordered appellant to file a concise statement of errors complained of on appeal, pursuant to Pennsylvania Rules of Appellate Procedure 1925(b). Appellant filed a concise statement on March 24, 2008, and, with this court's permission, an amended concise statement on March 26, 2008, raising the following issues:

"(1) The evidence presented at trial is insufficient to support the verdict of the jury, inter alia that:

"(a) the Commonwealth failed to present any evidence as to which weapon caused the injuries alleged to have been sustained by the victim;

"(b) the Commonwealth failed to present any evidence as to any weapon alleged to be in possession of the defendant;

"(c) the alleged victim did not identify the defendant as the person who assaulted him.

"(2) The verdict of the jury was against the weight of the evidence in that:

"(a) there were six alleged eyewitnesses to the shooting, five testified that they knew the defendant and he was not present at the scene of the shooting;

"(b) the allegation of a single witness who claimed the defendant participated in the attack was not corroborated by any circumstantial evidence and was contradicted by all the direct evidence;

"and the interests of justice require that the defendant be granted a new trial."

## STATEMENT OF FACTS

On the evening of August 5, 2005, Jacqueline Cortes and her boyfriend, Eddie Flores, went to El Tapatio Bar in Reading, Berks County, Pennsylvania. N.T., jury trial, 7/11/06, at 81-82. While there, they met her brothers, Ariel and Alexander Cortes, their friend Marcus Espada, and Ariel's girlfriend, Grace Perez. N.T., jury trial, 7/11/06, at 82.

Ms. Cortes' brothers and Mr. Espada left the bar first to visit their sister, Yahaira Cortes. Ms. Cortes, Mr. Flores, and Ms. Perez followed later, stopping first at a tavern on Walnut Street to purchase several six-packs of beer. N.T., jury trial, 7/11/06, at 85. The group reunited at Yahaira Cortes' apartment, 334 North 10th Street, Reading, where they were joined by Alexander's girlfriend Christine Cartagena. N.T., jury trial, 7/11/06, at 87-88.

In the early morning hours on August 6, 2005, as the group was sitting on the porch drinking, appellant's co-defendant, Pedro Sanchez-Perez, appeared walking north on 10th Street and crossed in front of Jacqueline Cortes, standing less than a foot away from her. N.T., jury trial,

7/11/06 at 88-90. Ms. Cortes recognized Mr. Sanchez-Perez as the same person she had seen while at the El Tapatio Bar, speaking to Ariel Cortes. N.T., jury trial, 7/11/06, at 83-85, 90-91.

Mr. Sanchez-Perez told everyone on the porch, "Get inside. They are coming." N.T., jury trial, 7/11/06, at 93. At that point, Ms. Cortes observed a shotgun in his hand, which she identified as the same shotgun Reading police recovered from Mr. Sanchez-Perez at his arrest. N.T., jury trial, 7/11/06, at 91-93, 95. Then as she was still sitting on the porch, she heard multiple gunshots from more than one gun coming from the direction of Elm Street. N.T., jury trial, 7/11/06, at 95-96. She observed two shooters, one whom she identified as the appellant, Jose Baucage, before she ran inside. N.T., jury trial, 7/11/06, at 96. Ms. Cortes also testified that appellant had a handgun and that she saw him fire it in the direction of the porch where everyone was sitting. N.T., jury trial, 7/11/06, at 97-98, 104.

As a result of this gunfire, Ariel Cortes was shot in the arm, the chest and in each leg. N.T., jury trial, 7/11/06, at 50-51. Marcus Espada was shot in the foot as he attempted to flee. N.T., jury trial, 7/11/06, at 68-69. The police recovered bullet casings from four different weapons at the scene of the crime, including four .38 casings, eight .40 casings, 12 9mm casings, and a shotgun wad. N.T., jury trial, 7/12/06, at 240-42. Additionally, many of the cars parked along the 300 block of North 10th Street were damaged by gunfire. N.T., jury trial, 7/11/06, at 29.

The testimony of Jacqueline Cortes was substantially corroborated by the testimony of Grace Perez and Eddie Flores. N.T., jury trial, 7/11/06, at 120-38, 156-74. Ad-

ditionally, after the shooting, Eddie Flores told the Reading police that he saw Mr. Sanchez-Perez fire what looked like a sawed-off shotgun at Ariel Cortes one or two times. See *e.g.,* Commonwealth exhibit 13. However, at trial, Mr. Flores testified that although he saw Mr. Sanchez-Perez chase Mr. Cortes into the street and heard a shotgun blast, he never saw Mr. Sanchez-Perez fire his weapon. N.T., jury trial, 7/11/06, at 164-65.

Ariel Cortes and Marcus Espada testified that they could not identify their attackers. N.T., jury trial, 7/11/06, at 54, 69. However, they admitted that even if they did know who shot them, they would not tell the police. N.T., jury trial, 7/11/06, at 57, 73.

## DISCUSSION

### I. *Sufficiency of the Evidence*

Appellant first alleges that the evidence is insufficient to support the jury's verdict.

Unfortunately, appellant has failed to clarify which of the numerous charges he believes are unsupported by the evidence.

Nevertheless, this court will address the issue below.

"The standard [applied] when reviewing the sufficiency of evidence is whether, viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. . . . [T]he facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the

evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. . . . The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence." *Commonwealth v. Lambert,* 795 A.2d 1010, 1014 (Pa. Super. 2002). (citations omitted)

## A. Aggravated Assault

To support a guilty verdict for aggravated assault under 18 Pa.C.S. §2702(a)(1), the Commonwealth must prove beyond a reasonable doubt that appellant attempted to cause serious bodily injury to another or caused such injury intentionally, knowingly, or recklessly under circumstances manifesting extreme indifference to the value of human life. 18 Pa.C.S. §2702(a)(1). Serious bodily injury is defined as "bodily injury which creates a substantial risk of death or which causes serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." 18 Pa.C.S. §2301.

The Commonwealth's evidence has been summarized above. The jury was presented with sufficient evidence to conclude beyond a reasonable doubt that appellant participated in the shooting at 334 North 10th Street and either caused or attempted to cause serious bodily injury

to Ariel Cortes under circumstances manifesting extreme indifference to the value of human life. Jacqueline Cortes testified that she saw appellant at the scene of the shooting firing a handgun at the people sitting on the porch. Shooting a firearm at another individual undoubtedly creates a substantial risk of death and may cause serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ. While the victim, Ariel Cortes, was either unable or unwilling to identify his assailant, Ms. Cortes' testimony was sufficient to support the jury's verdict.

While appellant argues that it was not appellant's bullet that struck Ariel Cortes, that issue is irrelevant.

"To sustain a conviction for aggravated assault, the Commonwealth need not show that serious bodily injury actually occurred, but only that the defendant attempted to cause serious bodily injury to another person. An 'attempt' exists when the accused intentionally acts in a manner which constitutes a substantial or significant step toward perpetuating serious bodily injury upon another." *Commonwealth v. Stevenson,* 894 A.2d 759, 774 (Pa. Super. 2006). (internal citations omitted)

The jury could certainly find that appellant's conduct constituted a substantial step toward causing serious bodily injury to another. Additionally, appellant was also convicted of conspiracy, making him liable for the acts of his co-conspirators committed in furtherance of the conspiracy. See *Commonwealth v. Johnson,* 920 A.2d 873, 879 (Pa. Super. 2007) ("Even if the conspirator did not act as a principal in committing the underlying crime, he is still criminally liable for the actions of his co-conspirators in furtherance of the conspiracy."). Thus, appellant could

be found guilty of aggravated assault as a co-conspirator, even if he was not the one who shot Ariel Cortes.

## B. Recklessly Endangering Another Person

Appellant is guilty of recklessly endangering Ariel Cortes, Jacqueline Cortes, and Marcus Espada if it is proved that he recklessly engaged in conduct that placed the victims in danger of death or serious bodily injury. 18 Pa.C.S. §2705. A person acts recklessly when he consciously disregards a substantial and unjustifiable risk that serious bodily injury will result from his conduct. 18 Pa.C.S. §302(b)(3). The risk must be of such nature and degree that, considering the nature and intent of the individual's conduct, and the circumstances known to him, its disregard involves a gross deviation from the standard of conduct a reasonable person would have observed in the individual's situation. *Id.*

As discussed above, the Commonwealth presented evidence that appellant discharged a handgun in the direction of the victims. Such conduct surely demonstrates a reckless disregard of the likelihood that the victims, as well as any other bystanders, would suffer serious bodily injury as a result of his gunfire.

## C. Possessing an Instrument of a Crime

In order to find appellant guilty of possessing an instrument of a crime, the jury must be satisfied beyond a reasonable doubt that appellant possessed a handgun, pistol, or other firearm; that this item was an instrument of a crime;[6] and that appellant possessed this item with

---

6. An instrument of a crime is anything specially made or specially adapted for criminal use or anything commonly used for criminal

the intent to attempt to commit or commit a crime. 18 Pa.C.S. §907(b).

The Commonwealth presented testimony from Jacqueline Cortes that appellant possessed a handgun on the night of the shooting. A gun is an object that is commonly used for criminal purposes, and the evidence suggests that appellant's gun was possessed by him under circumstances inconsistent with any lawful uses a gun has. The jury could reasonably find that on the night of the shooting, appellant possessed a gun with the intent to engage in the shooting of Ariel Cortes.

### D. Conspiracy

To sustain a conviction for criminal conspiracy, the Commonwealth must establish that appellant (1) entered an agreement to commit or aid in the unlawful act with another person or persons, (2) with a shared criminal intent and, (3) an overt act was done in furtherance of the conspiracy. This overt act need not be committed by appellant; it need only be committed by a co-conspirator. *Commonwealth v. Ruiz,* 819 A.2d 92 (Pa. Super. 2003). An explicit or formal agreement to commit crimes can seldom, if ever, be proved, but a conspiracy may be inferred where it is demonstrated that the relation, conduct, or circumstances of the parties, and the overt acts of the co-conspirators sufficiently prove the formation of a criminal confederation. *Id.* at 97, citing *Commonwealth v. Johnson,* 719 A.2d 778, 784-85 (Pa. Super. 1998).

"The conduct of the parties and the circumstances surrounding their conduct may create a web of evidence

---

purposes and possessed by the defendant under circumstances not manifestly appropriate for lawful uses it may have.

linking the accused to the alleged conspiracy beyond a reasonable doubt." *Id.* The Pennsylvania Superior Court has identified four factors to be utilized in determining the sufficiency of the evidence supporting the existence of a conspiracy. These factors are: "(1) an association between alleged conspirators; (2) knowledge of the commission of the crime; (3) presence at the scene of the crime; and (4) in some situations, participation in the object of the conspiracy." *Commonwealth v. Lambert,* 795 A.2d 1010, 1016 (Pa. Super. 2002). The presence of these four circumstances "may furnish a web of evidence linking an accused to an alleged conspiracy beyond a reasonable doubt when viewed in conjunction with each other and in the context in which they occurred." *Id.*

The evidence presented by the Commonwealth painted a picture of a well-planned ambush in which appellant, Pedro Sanchez-Perez, and an unknown third party converged on 334 North 10th Street almost simultaneously and opened fire on Ariel Cortes, his family, and friends. Such coordination among the assailants supports the jury's finding of guilt on the charge of conspiracy to commit recklessly endangering another person (Ariel Cortes).

Thus, for all the above reasons, the evidence was sufficient to support the verdict in this case.

## II. *Weight of the Evidence*

Appellant also claims that the verdict was against the weight of the evidence.

Assuming that appellant has properly presented this issue for review, "[t]he weight of the evidence is exclusively for the finder of fact, who is free to believe all,

part, or none of the evidence and to determine the credibility of the witnesses." *Commonwealth v. McCloskey*, 835 A.2d 801, 809 (Pa. Super. 2003).

In determining whether the verdict is against the weight of the evidence, the role of the trial court is to determine whether "notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice." *Commonwealth v. Widmer,* 560 Pa. 308, 320, 744 A.2d 745, 752 (2000). (citations omitted) Stated more concisely, the verdict should not be disturbed unless it is so contrary to the evidence as to shock one's sense of justice. *Commonwealth v. Miller,* 555 Pa. 354, 367, 724 A.2d 895, 901 (1999).

The Commonwealth's evidence is summarized above. After carefully reviewing the entire record and considering the relevant facts and law, this court cannot find that the verdict shocks its sense of justice.

While appellant argues that not all of the Commonwealth's witnesses testified in a consistent manner, the mere fact that there are some inconsistencies in a witness' testimony is not enough to destroy the Commonwealth's case or render the evidence insufficient to support the verdict. *Commonwealth v. Long,* 425 Pa. Super. 170, 185, 624 A.2d 200, 208 (1993), *appeal denied,* 535 Pa. 645, 633 A.2d 150 (1993). Furthermore, while only a single witness placed appellant at the scene of the crime, the jury was free to find her description of events to be the most credible. See *McCloskey,* 835 A.2d at 809.

Accordingly, this court finds no merit to appellant's contention that the verdict is against the weight of the evidence.

150

## CONCLUSION

For all the above reasons, the court respectfully requests that the defendant's appeal be denied and his sentence affirmed.