J-A13036-20

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA, : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
            Appellee :
:
    v. :
:
ANGEL MONTANEZ, :
:
            Appellant : No. 1870 EDA 2019

Appeal from the Judgment of Sentence Entered May 31, 2019
in the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0010018-2016

BEFORE: BENDER, P.J.E., LAZARUS, J. and STRASSBURGER, J.*

MEMORANDUM BY STRASSBURGER, J.: **FILED NOVEMBER 06, 2020**

Angel Montanez (Appellant) appeals from the May 31, 2019 judgment of sentence imposed following his nonjury conviction for third-degree murder. Upon review, we affirm.

We begin with the following factual summary provided by the trial court.

> In the early afternoon hours of January 3, 2016, Mildred Montanez, Appellant's mother, approached Jerry Lopez on the corner of Front and Wishart Streets in the city and county of Philadelphia to purchase marijuana. Upon seeing his mother attempting to buy illegal drugs from a known dealer, Appellant hollered across the street to Lopez that the woman was his mother and not to sell her anything. Mildred shouted back across the street for her son to shut up and mind his own business. Lopez then crossed the intersection, walked straight up to Appellant and sucker-punched him in the face. A brief scuffle ensued but was broken up. The [] attack was caught on surveillance film and admitted during Appellant's trial.

*Retired Senior Judge assigned to the Superior Court.

About an hour and a half later, Appellant, with his friend, Raul Rodriguez, returned to the intersection. The drug dealer, Lopez, and his cohort, Ativa Jackson, were exiting a hookah shop at the intersection when Lopez saw Appellant[,] whom he had sucker-punched earlier[,] and realized Appellant had come back to reinitiate the earlier fight. While walking across the intersection toward Appellant, Lopez took off his jacket, preparing for the next round of fighting to begin. Appellant and Rodriguez drew their guns, and shot at Lopez. Jackson[] pulled out his gun and began shooting, striking and killing Rodriguez. Richard DaVilla was also shot multiple times, resulting in his untimely demise during the shoot-out. The entire incident was caught on surveillance cameras and admitted during Appellant's trial.

Trial Court Opinion, 8/19/2019, at 2-3 (citations omitted; party designations and capitalization altered).

Based on the foregoing, Appellant was charged at the instant information with criminal homicide for Rodriguez's death. At a separate information (docket number 1023 of 2016), Appellant was charged with criminal homicide for DaVilla's death, conspiracy to commit murder, two firearms offenses, and possessing an instrument of crime (PIC).[1] Appellant proceeded to a nonjury trial at both informations from August 6 to August 10, 2018. The court found Appellant guilty of two counts of third-degree murder, conspiracy to commit murder, two firearms offenses, and PIC.

Appellant filed a motion for extraordinary relief, arguing that he could not be found guilty of third-degree murder for the death of his accomplice

---

[1] The Commonwealth charged Jackson as a co-defendant for the murders of Rodriguez and DaVilla. Prior to trial, Appellant's cases were severed from Jackson's by agreement of the parties. *See* N.T., 8/6/2018, at 6. The Commonwealth ultimately *nolle prossed* Jackson's murder charge as to Rodriguez. *See* Appellant's Brief at 17 n.1.

- 2 -

caused by a third party. Motion for Extraordinary Relief, 12/23/2018, at 6-11. On May 31, 2019, Appellant appeared before the trial court for a hearing on the motion and for sentencing. The trial court denied the motion and sentenced Appellant to 10 to 20 years of incarceration for the murder of Rodriguez, life imprisonment for the murder of DaVilla, concurrent terms of incarceration for the conspiracy and firearms convictions, and no further penalty for PIC. Appellant timely filed a post-sentence motion, which the trial court denied.

This timely-filed notice of appeal followed.[2, 3] Appellant presents a single issue for our review: whether the evidence was sufficient to sustain his third-degree murder conviction for the death of Rodriguez, who "was shot and killed by a victim/resister," Jackson. Appellant's Brief at 8. According to Appellant, his conduct was not the direct cause of Rodriguez's death, and "[t]he fatal flaw in the Commonwealth's theory of criminal culpability [] is the Commonwealth's attempt to substitute the notions of 'tort law proximate causation' for 'direct cause'" in order to hold Appellant responsible for Jackson's actions. *Id.* at 24, 27.

"Whether sufficient evidence exists to support the verdict is a question of law; our standard of review is *de novo* and our scope of review is

---

[2] Appellant simultaneously filed a notice of appeal for docket number 1023 of 2016, which was docketed at 1871 EDA 2019. On November 6, 2019, this Court dismissed that appeal for failure to file a brief.

[3] Both Appellant and the trial court complied with Pa.R.A.P. 1925.

plenary." *Commonwealth v. Giron*, 155 A.3d 635, 638 (Pa. Super. 2017)

(citation and quotation marks omitted).

> Our standard of review for a challenge to the sufficiency of the evidence is to determine whether, when viewed in a light most favorable to the verdict winner, the evidence at trial and all reasonable inferences therefrom are sufficient for the trier of fact to find that each element of the crimes charged is established beyond a reasonable doubt.
>
> The facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubt raised as to the accused's guilt is to be resolved by the fact-finder. As an appellate court, we do not assess credibility nor do we assign weight to any of the testimony of record. Therefore, we will not disturb the verdict unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances.

*Commonwealth v. Akhmedov*, 216 A.3d 307, 322 (Pa. Super. 2019) (*en banc*) (citations, quotation marks, and original brackets omitted).

> Pennsylvania retains the common law definition of murder, which is a killing conducted "with malice aforethought." Section 2502 of the Pennsylvania Crimes Code categorizes murder into degrees. Third-degree murder is defined as "all other kinds of murder," *i.e.*, those committed with malice that are not intentional (first-degree) or committed during the perpetration of a felony (second-degree).

*Commonwealth v. Packer*, 168 A.3d 161, 168 (Pa. 2017) (citations omitted); *see also Commonwealth v. Fisher*, 80 A.3d 1186, 1195 (Pa. 2013) ("[T]hird[-]degree murder is not by definition an unintentional killing; it is a malicious killing without proof that the specific result intended from the actions of the killer was the death of the victim.") (citation omitted).

According to Appellant, the evidence was insufficient to prove causation because, pursuant to **Commonwealth v. Redline**, 137 A.2d 472 (Pa. 1958), and **Commonwealth ex. Rel. Smith v. Myers**, 261 A.2d 550, 551 (Pa. 1970), Appellant cannot be held responsible for the death of his "co-felon" by a third party. Appellant's Brief at 23.[4, 5] Specifically, Appellant argues that

---

[4] In the alternative, Appellant contends that if he can be held responsible for Jackson's shooting of Rodriguez, he should have been able to raise the defense that Rodriguez assumed the risk. Appellant's Brief at 29. Appellant failed to raise this issue in his Rule 1925(b) statement. Thus, it is waived. **See Commonwealth v. Lord**, 719 A.2d 306, 309 (Pa. 1998) ("Any issues not raised in a 1925(b) statement will be deemed waived.").

[5] Appellant also argues the trial court erred in relying on **Commonwealth v. Gaynor**, 648 A.2d 295 (Pa. 1994), to support its conclusion that the evidence was sufficient to sustain Appellant's third-degree murder conviction for Rodriguez's death. Appellant's Brief at 29-30. By way of background, the Commonwealth relied on **Gaynor** in its closing argument seeking first-degree murder convictions in the instant case. **Gaynor** involved "the interplay among causation, specific intent and transferred intent in a case of murder of the first degree[,]" and whether the defendant could be found "guilty of that crime even though he did not fire the fatal shot" that killed a bystander. **Id.** at 296. The transferred intent theory provides that "if the intent to commit a crime exists, this intent can be transferred for the purpose of finding the intent element of another crime." **Commonwealth v. Jackson**, 955 A.2d 441, 450 (Pa. Super. 2008) (quotation marks omitted).

In the instant case, the trial court found Appellant guilty of third-degree murder. Unlike the first-degree murder charge at issue in **Gaynor**, "evidence of intent to kill is simply irrelevant to third[-]degree murder." **Fisher**, 80 A.3d at 1911. We note that in unreported memoranda, this Court has nonetheless both applied transferred intent to sustain third-degree murder convictions and stated that transferred intent is not relevant to third-degree murder convictions because third-degree murder does not require a specific intent to kill. We need not resolve this inconsistency today. Because our standard of review for sufficiency challenges is *de novo*, we are not

*(Footnote Continued Next Page)*

one is not criminally liable for the conduct of an adversary or resister even where one can be said to have participated in such activity which set in motion the events leading to homicide. In this case, therefore [Appellant] is not criminally liable for the actions of [] Jackson, a resister, and the evidence as to murder was insufficient as a matter of law.

*Id.* at 36.

Appellant's reliance on **Redline** and **Smith** is misplaced. These cases involve the application of the felony-murder rule, which provides as follows regarding the imputation of malice.

When an actor engages in one of the statutorily enumerated felonies and a killing occurs, the law, via the felony-murder rule, allows the finder of fact to infer the killing was malicious from the fact that the actor engaged in a felony of such a dangerous nature to human life because the actor, as held to a standard of a reasonable man, knew or should have known that death might result from the felony.

***Commonwealth v. Legg***, 417 A.2d 1152, 1154 (Pa. 1980) (footnote omitted). The statutorily enumerated felonies are "robbery, rape, [] deviate sexual intercourse by force or threat of force, arson, burglary or kidnapping." 18 Pa.C.S. § 2502 (defining "Perpetration of a felony").

Although Appellant and Rodriguez both attempted to shoot Lopez, they were not co-felons as defined by the felony-murder rule and Appellant was not convicted of felony murder. Moreover, Appellant only challenges the element of causation, not malice. Thus, the case law governing imputed

*(Footnote Continued)* ─────────────

limited by the trial court's reasoning and see no need to apply the transferred intent doctrine to resolve Appellant's sufficiency challenge solely to the causation element of third-degree murder.

malice and deaths of co-felons under the felony-murder rule is simply inapplicable herein.

Instead, the following legal framework governs our review.

**(a) General rule.--**Conduct is the cause of a result when:

> (1) it is an antecedent but for which the result in question would not have occurred; and

> (2) the relationship between the conduct and result satisfies any additional causal requirements imposed by this title or by the law defining the offense.

*** 

**(c) Divergence between probable and actual result.--**When recklessly or negligently causing a particular result is an element of an offense, the element is not established if the actual result is not within the risk of which the actor is aware or, in the case of negligence, of which he should be aware unless:

> (1) the actual result differs from the probable result only in the respect that a different person or different property is injured or affected or that the probable injury or harm would have been more serious or more extensive than that caused; or

> (2) the actual result involves the same kind of injury or harm as the probable result and is not too remote or accidental in its occurrence to have a bearing on the liability of the actor or on the gravity of his offense.

18 Pa.C.S. § 303.

The Commonwealth must "prove a direct causal relationship between the defendant's acts and the victim's death." ***Commonwealth v. Rementer***, 598 A.2d 1300, 1304 (Pa. Super. 1991) (citations, quotation marks, and emphasis omitted). "Put another way, if the fatal result was an

unnatural or obscure consequence of the defendant's actions, our sense of justice would prevent us from allowing the result to impact on the defendant's guilt." *Id.* at 1306-07. "[I]t is well established that the tort theory of causation will not suffice to impose criminal responsibility." *Id.* at 1304.

> [C]ausation-in-fact, the "but for" element of assessing the causal connection, alone will not necessarily determine criminal culpability. If it did, little would distinguish tort liability from criminal liability. Our cases emphasize that a criminal conviction requires "a more direct causal connection" than tort concepts. Thus not only do we demand that the defendant's conduct actually cause the victim's death in that "it is an antecedent but for which the result in question would not have occurred", we also question, in cases such as the instant one, whether the fatal result was so extraordinary, remote or attenuated that it would be unfair to hold the defendant criminally responsible for it.

*Id.* at 1306 (citations and footnotes omitted).

> To establish criminal causation, "the Commonwealth must prove that the defendant's conduct was so directly and substantially linked to the actual result as to give rise to the imposition of criminal liability." *Commonwealth v. Long*, 624 A.2d 200, 203-204 (Pa. Super. 1993) (citing *Rementer*, 598 A.2d at 1304) (citation omitted).
>
>> In *Rementer*, we set forth a two-part test for determining criminal causation. First, the defendant's conduct must be an antecedent, but for which the result in question would not have occurred. *Rementer*, 598 A.2d at 1304; 18 Pa.C.S. § 303(a)(1). A victim's death cannot be entirely attributable to other factors; rather, there must exist a "causal connection between the conduct and the result of conduct; and causal connection requires something more than mere coincidence as to time and place." *Rementer*, 598 A.2d at 1305, n.3 (quotation omitted). Second, the results of the defendant's actions cannot be so extraordinarily

- 8 -

remote or attenuated that it would be unfair to hold the defendant criminally responsible. ***Id.*** at 1305.

As to the first part of the test, the defendant's conduct need not be the only cause of the victim's death in order to establish a causal connection. ***Id.*** "Criminal responsibility may be properly assessed against an individual whose conduct was a direct and substantial factor in producing the death even though other factors combined with that conduct to achieve the result." ***Commonwealth v. Long***, 624 A.2d 200, 203 (Pa. Super. 1993)[.] The second part of the test is satisfied when the victim's death is the natural or foreseeable consequence of the defendant's actions. "Where the fatal result was an unnatural or obscure consequence of the defendant's actions, justice would prevent us from allowing the result to have an impact upon a finding of the defendant's guilt."

***Commonwealth v. Nunn***, 947 A.2d 756, 760 (Pa. Super. 2008) (citations and quotations omitted).

***Commonwealth v. Leaner***, 202 A.3d 749, 768-69 (Pa. Super. 2019) (citations altered).

Viewing the evidence in the light most favorable to the Commonwealth, as verdict-winner, we conclude the evidence provides ample support for Appellant's conviction of third-degree murder for the shooting death of Rodriguez. Appellant, in concert with Rodriguez, approached Lopez and Jackson with guns drawn. Regardless of whether Appellant or Rodriguez fired the first shot at Lopez, they both shot at Lopez. In response, Jackson returned fire, ultimately striking and killing Rodriguez. But for Appellant's actions of shooting at Lopez in a shoot-out with multiple participants on a public street, Rodriguez, Appellant's cohort, would not have been shot by

Jackson's return fire. As noted hereinabove, Appellant's actions need not be the sole cause of death to establish a causal connection. Appellant's conduct of shooting at Lopez to retaliate for Lopez's punch earlier that day, thereby prompting a shoot-out, was "a direct and substantial factor in producing [Rodriguez's] death even though other factors combined with that conduct to achieve the result." *Long*, 624 A.2d at 203. The death of a participant in a shoot-out was a natural and foreseeable consequence; it does not matter for purposes of causation in a third-degree murder case that Appellant's intended consequence was for Lopez to be shot, not his friend. Based on the foregoing, we conclude that both parts of the test were satisfied, and the evidence supports a finding that Appellant caused the death of Rodriguez for purposes of third-degree murder. Accordingly, Appellant is not entitled to relief.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/6/20