J. S71011/15

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
                                    :            PENNSYLVANIA
                 v.               :
                                      :
SHONTELLE HARVEY,           :         No. 2092 WDA 2014
                                      :
                Appellant      :

Appeal from the Judgment of Sentence, August 5, 2014,
in the Court of Common Pleas of Allegheny County
Criminal Division at No. CP-02-CR-0012853-2013

BEFORE: FORD ELLIOTT, P.J.E., SHOGAN AND OTT, JJ.

MEMORANDUM BY FORD ELLIOTT, P.J.E.:        **FILED MARCH 09, 2016**

Shontelle Harvey appeals from the judgment of sentence entered August 5, 2015, following his conviction in a bench trial of one count of homicide by vehicle while driving under the influence ("DUI")[1]; one count of homicide by vehicle[2]; one count of accidents involving death or personal injury[3]; one count of involuntary manslaughter[4]; one count of DUI highest rate of alcohol (BAC .16+) first offense[5]; two counts of DUI, general

---

[1] 75 Pa.C.S.A. § 3735(a).

[2] 75 Pa.C.S.A. § 3732(a).

[3] 75 Pa.C.S.A. § 3742(a).

[4] 18 Pa.C.S.A. § 2504(a).

[5] 75 Pa.C.S.A. 3802(c).

impairment, incapable of driving safely first offense[6]; one count of reckless

driving[7]; one count of driving at safe speed[8]; and one count of improper

pass on right[9]. We affirm.

The trial court summarized the facts and procedural history as follows:

> August 18th is [appellant's] birthday. On that day in 2013, he was celebrating the 41st anniversary of his birth. It will be one he never forgets. He killed someone that day.
>
> On May 12, 2014, [appellant] waived his right to a jury trial and proceeded with a bench trial. The Commonwealth presented testimonial evidence from 10 people. The defense presented 2 witnesses[,] including testimony from [appellant]. The Court, after engaging counsel in a spirited debate about how the facts match up with the law, found [appellant] guilty.[Footnote 1] His bond was revoked and sentencing was scheduled for August 5, 2014.
>
>> [Footnote 1] The guilt determination included the 3 summary offenses (reckless driving, driving at safe speed and improper pass on right), 3 counts of driving under the influence, involuntary manslaughter, accident involving death/personal injury, homicide by vehicle and homicide by vehicle while DUI.
>
> At sentencing, neither party had any additions or corrections to the pre-sentence investigation

---

[6] 75 Pa.C.S.A. § 3802(a)(1).

[7] 75 Pa.C.S.A. § 3736(a).

[8] 75 Pa.C.S.A. § 3361.

[9] 75 Pa.C.S.A. § 3304(a)(1).

report. [Appellant's] presentation included words from his godmother, Karrin Herring. The government countered with testimony from Eleanor Lee, the aunt of the deceased. The Court also heard from both counsel and [appellant]. The Court imposed the applicable mandatory minimum sentences: 3 to 6 years on the homicide by vehicle while under the influence and a concurrent 1 year for leaving the scene. Probation of 10 years is to follow incarceration.

Post-sentence motions were not filed nor was a direct appeal taken from the August 5th sentencing order. On September 25th, the Court received a letter from [appellant]. He asked for a lawyer to prepare a post-conviction petition. The request was granted. Counsel was able to negotiate with the prosecutor's office and allow for [appellant's] direct appeal rights to be reinstated. The Court memorialized that agreement with a December 17, 2014 order. A few days later, a timely *Notice of Appeal* was filed. A 1925(b) order was generated and counsel complied by filing a *Statement of Errors Complained of on Appeal* on February 25, 2015.

[Appellant's] attack is on the sufficiency of the evidence. *Statement of Errors* ("SOE"). ¶ 8(A) and (B), (Feb. 5, 2015).[Footnote 2] The particulars of his arguments will be better understood after this rendition of the facts.

[Footnote 2] The absence of post-sentence motions does not preclude the sufficiency arguments [from] being advanced. Pa.R.Crim.P. 606(A)(7) ("A defendant may challenge the sufficiency of the evidence to sustain a conviction . . . in one or more of the following ways: . . . (7) a challenge to the sufficiency of the evidence made on appeal.["]).

The Facts

A bar in Ambridge, Pennsylvania was the gathering place for 3 friends – Consetta Menta, Tiana Freeman and Akeliah Truss. Their gathering included some drinking. They didn't want their fun to stop. They wanted to go elsewhere. Ms. Truss called her friend, Mr. C., for a ride.

Mr. C. did not want to go all the way from Pittsburgh to Ambridge by himself. He asked Christine Connor to join him. She went along even though she saw Mr. C. have a drink and fall down the steps. According to Ms. Conner – Mr. C. was not intoxicated. Outside the Dollar General store in Ambridge, the 3 young women piled into the backseat of Mr. C.'s car. They headed south on state route 65 towards Pittsburgh.[Footnote 3] They would never reach their destination.

[Footnote 3] Route 65 runs parallel with the Ohio River.

Soon after Mr. C. began his delivery service, he and Tiana got in[to] a verbal argument. Most likely cause – money. Who was going to pay for the ride? The girls or the person whose party they were heading to. The verbal sparring did not stop. It continued and got so bad that Mr. C. stopped his car alongside state route 65. He wasn't totally off the side of the road. He got out of the driver's seat, opened the rear d[r]iver's door and hit Tiana in the arm/shoulder area. This interaction was highlighted by Mr. C. calling her a "bitch" followed by a command to get out of the car and an attempt to pull her out of the car. Tiana remained in the car thanks to her seat mate holding her in. The situation appeared to have passed when Mr. C. slammed the rear, driver's side door shut. That sound paled in comparison to what happened next.

I didn't see it but heard it. And, I felt it. That is the collective view of those from the backseat. A big boom. A smack. The car shook. Where is

Mr. C.? The girls got out of the car and walked to the front. There was Mr. C. over by the guardrail. Laying on the ground. He was not moving. Mr. C., identified as Charles Britt, was dead. He died from blunt force trauma to the head, neck, trunk, pelvis and extremities as a result of being hit by a motor vehicle.

August 18th was an ordinary start to the day for Sarah Tignanelli and Chareese Huff. Sarah picked up Chareese and they began their journey to work at the Greater Pittsburgh International [A]irport. They, too, were heading south on state route 65. Sarah was driving. Chareese was in the front passenger seat. About 5 miles north of the Sewickley bridge, Sarah noticed a car off on the side of the road and someone in the vicinity of the driver's side doors. This person is about an arm's length away from the car and in the traffic lane. He was not in the middle of the lane. He was closer to the car but still in the lane of travel. Sarah was in the left lane going a bit over the speed limit 45 miles per hour. She noticed a white SUV begin to overtake her car while traveling in the right lane. Just as they are both passing Mr. C.'s[] stopped car, Sarah heard a loud noise. Immediately, she realized someone was hit. She stopped a bit down the road. The white SUV did not. Sarah and Chareese came back to the scene. The gentleman on the ground was not moving.

Sewickley police officer, Gregory Mayo, was on the force a little over a year on August 18, 2013. His police cruiser was stationed at the Sewickley Bridge. He was watching traffic on state route 65, which is also known as Ohio River Boulevard. Around 3 a.m., his curiosity is spiked when he hears tires screech. The sound comes from a white SUV heading south towards Pittsburgh. He also notices the front right fender area has some serious damage. The white SUV slows down. Mayo pulls out and begins to follow that vehicle. It makes a few turns and parks. Officer Mayo sees a gentleman get out of the car. Mayo approaches while still in his car.

- 5 -

Mayo engages him in conversation. Mayo learns he is staying there, he panicked back there at the red light, which is why the brakes were hit so hard, and the front end damage was done a few weeks ago. Mayo pulls off. He notices the man go toward a house different than the one he previously suggested. Mayo loops around the block and returns. He sees the man walking down the driveway heading towards the white SUV. The man stops and walks back up the driveway.

Mayo's suspicions are now on high alert. He waits. Soon his radio informs him of an accident. The culprit was a white SUV with front end damage to the passenger side front. Mayo approach's [sic] the parked vehicle. This time on foot. He sees some red substance on the car near the damaged area. It looked like blood. When another officer arrives, the previously encountered man comes out of the woods and says – I did it. I did it. I didn't mean it. I didn't see him. Officer Mayo placed him in the back seat of a police car. Before doing so, Mayo noticed slurred speech, red/glassy eyes and he was fumbling with his wallet when a fellow officer asked for identification. Officer Mayo was of the opinion that [appellant] was not fit to drive a car.[Footnote 4] [Appellant] was taken to a local hospital for a blood draw. [Appellant's] blood was taken at 3:43 a.m. His blood alcohol content was .16.

> [Footnote 4] This opinion was repeated by Officer Ian Ging who came to where the white SUV was parked at the request of Officer Mayo.

About 7 hours later, [appellant] is in a room at headquarters for the county police. He is advised of his rights. He signs the waiver form. He speaks with Det. Lori McKeel. [Appellant] talked about his drinking history and his travels southbound on Rt. 65 earlier that day.[Footnote 5] Around 1 a.m.[,] he was at a bar and had 4 beers. He left there and went to a party, stayed for maybe an hour. He had 2 maybe 3 beers there. He was driving south on

route 65. He noticed traffic was all moving over in to [sic] the left lane. [Appellant] saw someone standing in the road in the right lane and felt he had enough room to continue his travel in the right lane and miss the person. [Appellant] thought he hit the stopped car or the person. He didn't stop because he was on probation. He just kept going until he got into Sewickley. A friend, with no last name and no known address, supposedly lived there. He saw the marked police cars by his parked car and knew he had done something wrong.

> [Footnote 5] [Appellant's] statement was not only orally recounted by the detective[,] but also a tape recording was played.

Trial court opinion, 1/13/15 at 1-5.

Appellant raises the following issues for our review:

> I. WAS THE EVIDENCE INSUFFICIENT AS A MATTER OF LAW TO SUPPORT [APPELLANT'S] CONVICTIONS FOR HOMICIDE BY VEHICLE WHILE DRIVING UNDER THE INFLUENCE, HOMICIDE BY VEHICLE, AND INVOLUNTARY MANSLAUGHTER, BECAUSE THE COMMONWEALTH FAILED TO PROVE BEYOND A REASONABLE DOUBT THAT [APPELLANT'S] INTOXICATION AND VIOLATION OF TRAFFIC REGULATIONS WERE A DIRECT AND SUBSTANTIAL CAUSE OF THE VICTIM'S DEATH?
>
> II. WAS THE EVIDENCE INSUFFICIENT AS A MATTER OF LAW TO SUPPORT [APPELLANT'S] CONVICTIONS FOR HOMICIDE BY VEHICLE WHILE DRIVING UNDER THE INFLUENCE, HOMICIDE BY VEHICLE, AND INVOLUNTARY MANSLAUGHTER, BECAUSE THE COMMONWEALTH FAILED TO PROVE BEYOND A REASONABLE DOUBT THAT [APPELLANT] ACTED WITH THE REQUIRED RECKLESSNESS OR GROSS NEGLIGENCE?

Appellant's brief at 6.

> Our standard of review for a challenge to the sufficiency of the evidence is well settled. We must view all the evidence in the light most favorable to the verdict winner, giving that party the benefit of all reasonable inferences to be drawn therefrom. Additionally, it is not the role of an appellate court to weigh the evidence or to substitute our judgment for that of the fact-finder.

***Commonwealth v. Alford***, 880 A.2d 666, 669-670 (Pa.Super. 2005),

***appeal denied***, 890 A.2d 1055 (Pa. 2005), quoting ***Commonwealth v.***

***Gruff***, 822 A.2d 773, 775 (Pa.Super. 2003), ***appeal denied***, 863 A.2d 1143

(Pa. 2004) (citations omitted).

The motor vehicles code defines homicide by vehicle while DUI as:

> **(a)  Offense defined.--**
>
> Any person who unintentionally causes the death of another person as the result of a violation of section 3802 (relating to driving under the influence of alcohol or controlled substance) and who is convicted of violating section 3802 is guilty of a felony of the second degree when the violation is the cause of death and the sentencing court shall order the person to serve a minimum term of imprisonment of not less than three years.

75 Pa.C.S.A. § 3735(a).

The motor vehicle code defines homicide by vehicle as:

> **(a)  Offense. –**
>
> Any person who recklessly or with gross negligence causes the death of another person while engaged in the violation of any law of

> this Commonwealth or municipal ordinance applying to the operation or use of a vehicle or to the regulation of traffic except section 3802 (relating to driving under the influence of alcohol or controlled substance) is guilty of homicide by vehicle, a felony of the third degree, when the violation is the cause of death.

75 Pa.C.S.A. § 3732(a).

The crimes code defines involuntary manslaughter as:

> **(a) General rule.--**
>
> A person is guilty of involuntary manslaughter when as a direct result of the doing of an unlawful act in a reckless or grossly negligent manner, or the doing of a lawful act in a reckless or grossly negligent manner, he causes the death of another person.

18 Pa.C.S.A. § 2504(a).

Appellant first claims that the "[victim's] wrongful actions superseded [appellant's] such that a conviction cannot be sustained." (Appellant's brief at 21.) Stated differently, appellant contends that the victim's death "would not have occurred at all without [the victim's] reckless or negligent acts" (***Id.*** at 24.)

In ***Commonwealth v. Spotti***, 94 A.3d 367 (Pa.Super. 2014), we recently re-examined criminal causation and superceding and intervening causes, as follows:

> [T]he following definitions are germane to our analysis:

**(a)** **General rule.--**Conduct is the cause of a result when:

(1) it is an antecedent but for which the result in question would not have occurred; and

(2) the relationship between the conduct and result satisfies any additional causal requirements imposed by this title or by the law defining the offense.

\* \* \*

**(c)** **Divergence between probable and actual result.--**When recklessly or negligently causing a particular result is an element of an offense, the element is not established if the actual result is not within the risk of which the actor is aware or, in the case of negligence, of which he should be aware unless:

(1) the actual result differs from the probable result only in the respect that a different person or different property is injured or affected or that the probable injury or harm would have been more serious or more extensive than that caused; or

(2) the actual result involves the same kind of injury or harm as the probable result and is not too remote or accidental in its occurrence to have a bearing on the liability of the actor or on the gravity of his offense.

18 Pa.C.S. § 303(a); (c).

In ***[Commonwealth v.] Nunn***, [947 A.2d 756 (Pa.Super. 2008),] we reiterated:

> To establish criminal causation, the Commonwealth must prove that the defendant's conduct was so directly and substantially linked to the actual result as to give rise to the imposition of criminal liability. ***Commonwealth v. Long***, 425 Pa.Super. 170, 624 A.2d 200, 203-204 (1993), appeal denied, 535 Pa. 645, 633 A.2d 150 (1993) (citing ***Commonwealth v. Rementer***, 410 Pa.Super. 9, 598 A.2d 1300, 1304 (1991), ***appeal denied***, 533 Pa. 599, 617 A.2d 1273 (1992)).
>
> In ***Rementer***, we set forth a two-part test for determining criminal causation. First, the defendant's conduct must be an antecedent, but for which the result in question would not have occurred. ***Rementer***, 598 A.2d at 1305; 18 Pa.C.S.A. § 303(a)(1). A victim's death cannot be entirely attributable to other factors; rather, there must exist a "causal connection between the conduct and the result of conduct; and causal connection requires something more than mere coincidence as to time and place." ***Rementer***, 598 A.2d at 1305, n. 3 (quoting LaFave and Scott, ***Substantive Criminal Law***, Vol. 1, Ch. 3., at 391-392 (1986)). Second, the results of the defendant's actions cannot be so extraordinarily remote or attenuated that it would be unfair to hold the defendant criminally responsible. ***Rementer***, 598 A.2d at 1305.

As to the first part of the test, the defendant's conduct need not be the only cause of the victim's death in order to establish a causal connection. *Rementer*, 598 A.2d at 1305. "Criminal responsibility may be properly assessed against an individual whose conduct was a direct and substantial factor in producing the death even though other factors combined with that conduct to achieve the result." *Long*, 624 A.2d at 203 (citing *Commonwealth v. Skufca*, 457 Pa. 124, 321 A.2d 889 (1974), appeal dismissed, 419 U.S. 1028, 95 S.Ct. 510, 42 L.Ed.2d 304 (1974)). The second part of the test is satisfied when the victim's death is the natural or foreseeable consequence of the defendant's actions. *Id.* (citing *Rementer* and *Commonwealth v. Paquette*, 451 Pa. 250, 301 A.2d 837 (1973)). "Where the fatal result was an unnatural or obscure consequence of the defendant's actions, justice would prevent us from allowing the result to have an impact upon a finding of the defendant's guilt." *Id.* at 204, 624 A.2d 200 (citing *Rementer*, 598 A.2d at 1306-1307).

*Nunn*, 947 A.2d at 760.

Recently, in *Commonwealth v. Fabian*, 60 A.3d 146 (Pa.Super. 2013), we expressed:

In seeking to define the requirement that a criminal defendant's conduct be a direct factor in the death of another, the courts of this Commonwealth have held that 'so long as the defendant's conduct started the chain of causation which led to the victim's death, criminal responsibility . . . may be properly found.'

> ***Fabian***, ***supra***, at 152 citing ***Commonwealth v. McCloskey***, 835 A.2d 801, 808 (Pa.Super.2003).

***Spotti***, 94 A.3d at 375-376.

Here, although appellant concedes that he "may not have been making the best of decisions that evening," he nevertheless complains that, even though he was driving drunk and struck and killed the victim, the victim was the legal cause of his own death because he, too, had been drinking that night and was standing next to his car when appellant struck him down. (Appellant's brief at 30.) The record, however, belies appellant's contention.

The record reflects that on August 18, 2013, at approximately 3:00 a.m., two eyewitnesses were carpooling to work. (Notes of testimony, 5/12/14 at 16, 31-32.) The two travelled south on Route 65 in the left passing lane at approximately 50 miles per hour, which was 5 miles over the speed limit. (***Id.*** at 16-19, 24, 32.) The passenger testified that she saw a car parked on the side of the road in the south pull-off lane and that a man stood outside of the car. (***Id.*** at 17, 20-21.) She further testified that she thought the man had a flat tire. (***Id.*** at 25.) The driver testified that as she approached from approximately 50 yards away, she had "no problem" seeing the victim standing next to his car. (***Id.*** at 37.) The driver and her passenger both testified that they saw appellant's white SUV pass them on the right. (***Id.*** at 20-21, 34-35.) The passenger estimated appellant to be driving at a speed of 55 to 60 miles per hour, and the driver estimated his

speed at 66 to 67 miles per hour. (*Id.* at 21, 36). As appellant passed them on the right, both witnesses heard a loud noise and knew that appellant's SUV had struck the victim. (*Id.* at 19-21, 34-35.)

Appellant testified to consuming quite a bit of alcohol that night, and forensic evidence revealed that his BAC level registered at .160, which is well over the legal limit. (*Id.* at 151, 117.) Appellant further testified that as he drove in the right-hand lane on Route 65, he saw cars ahead of him come to a dead stop and then drive around an "obstruction." (*Id.* at 152-153.) He also testified that he saw a "black guy" standing in front of a vehicle. (*Id.* at 153.) Nevertheless, appellant testified that he continued to drive in the right lane and then hit what he believed to be a mirror on the parked car. (*Id.* at 153-154.)

The Commonwealth also offered an expert who testified that alcohol impairs judgment, adversely affects vision and reaction time, and also affects divided attention skills necessary to safely operate a motor vehicle. (*Id.* at 119-120.)

Viewing the evidence adduced at trial in the light most favorable to the Commonwealth and giving it the benefit of all reasonable inferences to be drawn therefrom, the evidence was sufficient to prove beyond a reasonable doubt that appellant's conduct was a direct and substantial factor in causing the victim's death. By his own admission, appellant saw the victim standing outside of a parked car. Appellant's visibility of the victim was so clear that

appellant was able to identify his race. But despite seeing the victim and seeing cars in front of him come to a dead stop and then go around an "obstruction," appellant decided to continue driving in the right-hand lane. As such, the victim's death was a foreseeable consequence of appellant's failure to take any measures to avoid striking the victim with his vehicle, such as driving around victim, just as appellant saw all of the other drivers do. Therefore, appellant's claim that the evidence was insufficient to support his convictions of homicide by vehicle while DUI, homicide by vehicle, and involuntary manslaughter because the Commonwealth failed to prove criminal causation beyond a reasonable doubt lacks merit.

Appellant next complains that the evidence was insufficient to convict him of homicide by vehicle while DUI, homicide by vehicle, and involuntary manslaughter because he acted with "simple ordinary negligence, not **gross** negligence." (Appellant's brief at 33 (emphasis in original).)

To prove homicide by vehicle while DUI, the evidence must demonstrate that the accused unintentionally caused the death of another person as the result of DUI. 75 Pa.C.S.A. § 3735(a); **Commonwealth v. Cruz**, 71 A.3d 998, 1006-1007 (Pa.Super. 2013). In order to convict a person of that crime, the Commonwealth must prove that the driver acted with criminal negligence. **Commonwealth v. Samuels**, 778 A.2d 638, 640 (Pa. 2001). Criminal negligence has been defined as "a gross deviation from the standard of care that a reasonable person would observe."

18 Pa.C.S.A. § 302(b)(4); *Commonwealth v. Cheatham*, 615 A.2d 803, 806 (Pa.Super. 1992), quoting *Commonwealth v. Heck*, 535 A.2d 575, 580 (Pa. 1978).

Here, appellant advances no argument that the evidence was insufficient to support a finding of criminal negligence and, instead, argues solely that the level of culpability is gross negligence or recklessness and that the evidence was insufficient to establish gross negligence or recklessness. Because appellant concedes that the evidence was sufficient to establish the *mens rea* of criminal negligence and because the evidence was sufficient to establish gross negligence/recklessness, as discussed below, we find it unnecessary to address this claim further.

To sustain a conviction of homicide by vehicle, the Commonwealth must prove that the accused caused a death by acting recklessly or with gross negligence while violating a law or municipal ordinance (with the exception of DUI) under the conditions set forth in the statute. 75 Pa.C.S.A. § 3732(a); *Commonwealth v. Pedota*, 64 A.3d 634, 636 (Pa.Super. 2013). Manslaughter requires a mental state of recklessness or gross negligence. *Commonwealth v. Fabian*, 60 A.3d 146, 151 (Pa.Super. 2013).

> A person acts recklessly with respect to a material element of an offense when he consciously disregards a substantial and unjustifiable risk that the material element exists or will result from his conduct. The risk must be of such a nature and degree that, considering the nature and intent of the

> actor's conduct and the circumstances known to him, its disregard involves a gross deviation from the standard of conduct that a reasonable person would observe in the actor's situation.

18 Pa.C.S.A. § 302(b)(3). The term "grossly negligent" is equivalent to the term "reckless." ***Commonwealth v. Huggins***, 836 A.2d 862, 868 (Pa. 2003).

Here, viewing the evidence adduced at trial in the light most favorable to the Commonwealth and giving it the benefit of all reasonable inferences to be drawn therefrom, the evidence was sufficient to prove beyond a reasonable doubt that appellant acted recklessly or with gross negligence. Eyewitnesses testified that appellant was speeding and improperly passing on the right. Appellant testified that he saw cars driving around an "obstruction" and that he saw a man standing by a parked car. Nevertheless, appellant decided against driving around the "obstruction" and continued to drive in the right-hand lane. Therefore, appellant consciously disregarded the unjustifiable risk of striking the man with his vehicle and killing him.

Judgment of sentence affirmed.

J. S71011/15

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/9/2016