J-A05043-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| BRUCE GARCIA | : | |
| | : | |
| Appellant | : | No. 2349 EDA 2019 |

Appeal from the Judgment of Sentence Entered April 8, 2019
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0005886-2018

BEFORE:   OLSON, J., NICHOLS, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY STEVENS, P.J.E.:                    Filed: March 11, 2021

Appellant Bruce Garcia appeals from the judgment of sentence of one (1) year to two (2) years in prison entered in the Court of Common Pleas of Philadelphia County on April 8, 2019, for his convictions of Simple Assault and Possession of an Instrument of Crime (PIC) following a non-jury trial.[1]  We affirm.

The trial court detailed the facts and procedural history herein as follows:

> [Appellant] and Caroline Axan ("Complainant") were once romantic partners who became engaged to be married in April 2017. N.T. 2/1/19 at 11. They shared a home together on North Percy Street in the city and county of Philadelphia. N.T. 2/1/19 at 12. On the night of July 29, 2018, Complainant's son, Dominic Rodriguez ("Rodriguez"), then sixteen years old, was visiting for the weekend. N.T. 2/1/19 at 12-13, Rodriguez arrived at the

---

[*] Former Justice specially assigned to the Superior Court.
[1] 18 Pa.C.S.A. §§ 2701(a) and 907(a), respectively.

house at approximately 7:00 PM to an already irritable [Appellant]. N.T. 2/1/19 at 13-14. [Appellant] and Complainant argued when Complainant asked [Appellant] for a cigarette. N.T. 2/1/19 at 14. Knowing Complainant was trying to quit smoking, Rodriguez had thrown away a pack containing three cigarettes. N.T. 2/1/19 at 69. Learning this, [Appellant] became verbally aggressive toward Rodriguez, accusing Rodriguez of disrespecting his mother. *Id.* [Appellant] shouted, and Rodriguez said, "don't get loud with my mom." N.T. 2/1/19 at 14. Rodriguez then saw [Appellant] go to the kitchen and get a large kitchen knife, measuring approximately twelve inches long.[3] N.T. 2/1/19 at 18 and 70. [Appellant] began saying things like, "I'm a crazy mother fucker, I'm not afraid of jail, and so on." N.T. 2/1/19 at 14 and 70.

Rodriguez tried to deescalate the situation by walking outside and speaking to his girlfriend on the phone who had been on the phone throughout the argument. N.T. 2/1/19 at 29, 70, and 77-78. [Appellant] followed Rodriguez and sat on one of the steps leading to the house. N.T. 2/1/19 at 17. Complainant followed [Appellant], and saw him holding the knife behind his back. *Id*. Complainant tried to get around [Appellant] to be near Rodriguez standing close by. *Id*. As Rodriguez stepped forward to get between [Appellant] and Complainant, [Appellant] stood up and grabbed Complainant by her hair and pulled her backward, while continuing to hold the knife in his other hand. N.T. 2/1/19 at 17-24, 40. Complainant fell over the step, cutting her knee.[4] N.T, 2/1/19 at 31. [Appellant] held the knife, pointing it toward Complainant, holding it only two or three inches from her face. N.T. 2/1/19 at 20. [Appellant] declared, "I'm a crazy mother fucker. I'm not going to jail." *Id*. [Appellant] pointed at Rodriguez with his right hand, continuing to hold the knife on his left side. N.T. 2/1/19 at 25 and 73-75. Rodriguez got his foot behind [Appellant's] foot and [Appellant] tripped, falling backward to the ground. N.T. 2/1/19 at 76. Complainant got the knife away from Defendant and placed it in a nearby trash can. N.T. 2/1/19 at 27 and 77.

The police arrived at 1:30 AM on July 30, 2018.[5] They recovered the knife from the trash can, arrested [Appellant], and transported Complainant to the hospital to be treated for injuries. N.T. 2/1/19 at 34. Complainant was not injured by the knife. N.T. 2/1/19 at 31.

[Appellant] was convicted of simple assault and PIC before this Honorable Court on February 1, 2019. A Presentence Investigation ("PSI") was ordered and [Appellant] appeared for

sentencing on April 8, 2019. [Appellant's] offense gravity score was a three, and after some discussion, his prior record score was determined to be a five.[6] N.T. 4/8/19 at 3-6. The guidelines call for a range of six to sixteen, plus or minus 3. N.T. 4/8/19 at 6. Defense counsel asked for a time-served probationary sentence, citing a difficult childhood and low IQ, clean criminal history for nearly ten years, and his housing accommodations once he is released as mitigating factors, and his good behavior as an inmate. N.T. 4/8/19 at 8, Defense counsel conceded that [Appellant] had yet to complete anger management but stated that "JJPI has a much more complex program and that's something that he is planning to do going forward." N.T. 4/8/19 at 9. Additionally, Defense Counsel admitted exhibit D-2, a mitigation memo prepared by counsel on [Appellant's] behalf. N. T. 4/8/19 at 7.

The Commonwealth asked for a sentence of two to four years' incarceration followed by one year of probation, to be supervised by the Mental Health Unit and with domestic violence conditions. N.T. 4/8/19 at 11. The Commonwealth cited numerous aggravating factors, including [Appellant's] prior criminal history involving violence against women, and even previous arrests involving this same [C]omplainant. N.T. 4/8/19 at 13-15.

Additionally, the Commonwealth admitted exhibit C-2, excerpts from calls made by [Appellant] from custody. In those calls, [Appellant] repeatedly tried to convince Complainant not to show up to court so the charges would be dropped. In a call on August 29, 2018, [Appellant] said to Complainant, "If this goes to trial and no one shows up, I could get out; If they send you a subpoena and you don't show up two times, they'll cut me lose." [Appellant] also implored Complainant to outright lie about what happened on July 29-30, 2018. On August 30, 2018, [Appellant] said to Complainant, "You are a pretty good liar, if you fill out my affidavit my attorney will back you up." Furthermore, [Appellant] showed no remorse for his actions, telling Rodriguez on September 6, 2018, "If you were somebody else you would help me you would forget everything. You did this to yourself." Finally, [Appellant] told Complainant on September 18, 2018, "I don't know what's going to happen, my freedom is in your hands and on your son's hands."

During his allocution, [Appellant] recited a statement he had prepared for the court. He read:

> When I get out of jail-I mean, when I get out, my
> goals are to continue to go to my probation, take care of
> my family and kids. I'm going to keep doing my mental

health and I am going to try to find a legal job, even though I get SSI. I really want to do good with myself, like a normal person. I want to depend on myself and not my SSI.

I will never, ever, ever bother the [C]omplainant that put this case on me, because this time I have been locked up and I have learned my lesson. And from now on, I'm going to do the best of me. I'm going to move forward and not look back. And I promise that I won't fail you or my probation officer, especially my kids and family or myself.

That's why I'm asking you to give me an opportunity to come back to my community and be a man at this time and prove to my community and family that I am a way better man than I ever was. Thank you. That is all I have to say for now.

N.T. 4/8/19 at 18. The [c]ourt thanked [Appellant] for his statement, and asked if [Appellant] had anything else he would like to add, to which [Appellant] assented, and the following exchange ensued:

THE [APPELLANT]: When the DA said that I was calling the [C]omplainant, I didn't want to call her. She told my sister for me to call her.
MS. EAGAN: Mr. Garcia-
THE COURT: Well, he could say whatever he wants.
Anything else?
THE [APPELLANT]: I didn't want to call her. I didn't want to contact her.
THE COURT: You didn't want any contact, but, yet, you called her on the phone.
Got it.
THE [Appellant]: I stopped calling her, thought [sic]. I stopped calling her.
THE COURT: All right.
I see.

N.T. 4/8/19 at 19. The Court then stated:

I need to take into consideration the need of protection of the public. And although you were just convicted of misdemeanors, this is a serious case and you have a serious record...

- 4 -

> The fact that you have some very serious cases - your background gives me great concern. And even today, it's your opportunity for allocution, after reading a very well-written statement, you continued saying that it's the [C]omplainant that was the one initiating this contact.
>
> Sir, I think C-2 speaks for itself. And if this is appealed, this would certainly be in the record. There are multiple phone calls and conversations. And your inability to stay away from the [C]omplainant and the attempts to affect this case, are sickening to me.

N.T. 4/8/19 at 20-21. The [c]ourt imposed a sentence of one to two years on both charges, to run concurrently, with no probation tail.[7] N.T. 4/8/19 at 22. The [c]ourt noted that [Appellant] was recommended for boot camp, if eligible. *Id*. Finally, the [c]ourt explained, "You've been on probation for 10 years. I think when you're on probation, you do pretty well. But I don't want you to be on probation when you've already been on probation for 10 years." N.T. 4/8/19 at 23.

Through counsel, [Appellant] filed a timely motion for reconsideration of sentence on April 18, 2019, raising issues pertaining to his VOP sentences, rather than those of the underlying offense. Defendant's motion was denied by operation of law on August 19, 2019. [Appellant] filed a timely notice of appeal on August 20, 2019. [Appellant] was ordered by this Honorable Court to file a Concise Statement of Matters Complained of on Appeal, under Pa.R.A.P. 1925(b). [Appellant] filed a 1925(b) statement on August 30, 2019; however, issues regarding a previously-employed court reporter delayed production of the notes of testimony, which were produced on October, 8, 2019 and [Appellant] was ordered to file a 1925(b) statement by October 29, 2019.[8] On November 5, 2019, this [c]ourt issued a final warning ordering [Appellant] submit his supplemental 1925(6) statement by November 15, 2019. [Appellant] filed his 1925(b) statement on November 15, 2019.

_____

[3] The photo of the knife was admitted as Commonwealth exhibit C-1. N.T. 2/1/19 at 19.

[4] Complainant also reported injuries to her neck and arm, but no photographs nor medical records were provided to that effect.

[5] Complainant could not recall exactly how much time had passed throughout the evening and how long the incident lasted; however, it was stipulated by and between counsel that the police arrived at approximately 1:30am the following day. N.T. 2/1/19 at 33.

[6] There was some discrepancy as to whether [Appellant] should be considered a RFEL or a five for purposes of prior record. N.T. 4/8/19 at 3-6.

[7] [Appellant] also had two VOPs related to this matter, which were not appealed in the instant matter. [Appellant's] total commitment came to two to four years on the misdemeanors and VOPs: N.T. 4/8/19 at 22 and 25.

[8] Turnover in the Office of the Court Reporter led to significant delays in production of notes of testimony. On September 18, 2019, this [c]ourt issued an order directing the Office of the Court Reporter to produce the necessary notes of testimony by September 27, 2019. The Court's Judicial Law Clerk emailed counsel that the notes were available and provided notice of the new due date for [Appellant's] 1925(b) statement.

Trial Court Opinion, filed 12/20/19, at 1-6.

On March 20, 2020, Appellant filed a "Motion to Allow Appellant to Supplement Appellant's Brief with Additional Questions Presented, or, in the Alternative, Vacate the Briefing Schedule and Remand to the Trial Court to Permit Appellant to file a Supplemental Statement of Errors Complained of on Appeal." Upon consideration thereof, this Court entered a *Per Curiam* Order on April 13, 2020, wherein we stated the following:

[T]he record and the petition are hereby REMANDED to the trial court for a period of sixty (60) days. Appellant shall be permitted to file in the trial court and serve upon the trial judge a supplemental Pa.R.A.P. 1925(b) statement of errors complained of on appeal, within thirty (30) days of the date that this Order is filed. The trial judge shall prepare a supplemental opinion, pursuant to Pa.R.A.P. 1925(a), in response to the supplemental Rule 1925(b) statement, if necessary, within thirty (30) days of the date the supplemental statement is received. The trial court

shall include the supplemental Rule 1925(b) statement and any supplemental opinion in the certified record.

The Prothonotary of this Court is directed to provide copies of this Order to the trial court clerk of courts and the Honorable Zachary C. Shaffer. The briefing schedule is hereby VACATED, to be re-established by the Prothonotary of this Court upon the return of the certified record. Jurisdiction is retained.

In compliance with this Court's Order, on April 23, 2020, Appellant filed his Second Supplemental Statement of Matters Complained of on Appeal, and the trial court filed its Supplemental Opinion pursuant to Pa.R.A.P. 1925(a) addressing Appellant's supplemental issues on July 22, 2020.

In its Supplemental Opinion, the trial court fully incorporated its December 20, 2019, Rule 1925(a) Opinion. Additionally, the court found that to the extent Appellant's argument could be construed as a challenge to the charging documents, Appellant had waived any challenge to the Bill of Information for counsel's failure to preserve such a challenge at trial.

The trial court further construed Appellant's references in his Supplemental Statement of Matters Complained of on Appeal to understaffing at the Defender Association of Philadelphia as an ineffective assistance of counsel claim which it deemed "should be properly addressed by way of collateral appeal under the Post-Conviction Relief Act." Trial Court Opinion, filed 7/22/20, at 1-3.

In his brief, Appellant presents the following issue for our review:

Did not the trial court err in finding the evidence sufficient to sustain a verdict of guilt beyond a reasonable doubt for the charges of simple assault and possessing instruments of crime where the evidence of record, viewed in the light most favorable

to the Commonwealth, was equally consistent with Appellant's guilt as it was with his innocence insofar that the evidence supported the diametrically opposed conclusions that Appellant intended his conduct for the named complainant, Carolyn Axten, and that he, alternatively, intended his conduct exclusively for Dominic Rodriguez, against whom Appellant was not accused of committing any crime?

Brief for Appellant at 3.

Appellant states "[t]he evidence of record is confusing and difficult to reconcile given the patent inconsistencies between the witnesses' testimonies, and the internal contradictions within [the Complainant's] individual testimony." Brief for Appellant at 4. Appellant maintains when the evidence is viewed in a light most favorable to the Commonwealth as the verdict winner, it supports two diametrically opposed inferences, namely, that Appellant intended to direct his conduct toward both the Complainant and Rodriguez and that he intended it only toward Rodriguez, who was not named as a complainant.

Relying upon the Pennsylvania Supreme Court's decision in *In re J.B*., 189 A.3d 390, 409 (Pa. 2018), Appellant urges this Court to apply the exception to the rule of appellate deference, because "[the Complainant's] testimony was, on its own, 'so unreliable or contradictory that it is insufficient as a matter of law to convict' 189 A.3d at 415, n. 26." Brief for Appellant at 21-27. Appellant reasons this is so because the trial court "exclusively relied" on the Complainant's contradictory testimony she provided in her direct and cross-examination rather than upon the "consistently more cogent and

- 8 -

consistent" testimony of Rodriguez. *Id*. at 28. Following our review, we disagree.

First, an argument that the finder of fact should have credited one witness's testimony over that of another witness goes to the weight of the evidence, not the sufficiency of the evidence. *Commonwealth v. W.H.M.*, 932 A.2d 155, 160 (Pa.Super. 2007) (explaining claim that jury should have believed appellant's version of events rather than that of victim goes to weight, not sufficiency of evidence); *Commonwealth v. Wilson*, 825 A.2d 710, 713–14 (Pa.Super. 2003) (concluding sufficiency of evidence does not include assessment of credibility of testimony; such claim goes to weight of evidence); *Commonwealth v. Gaskins*, 692 A.2d 224, 227 (Pa.Super. 1997) (stating credibility determinations are made by finder of fact and challenges to those determinations go to weight, not sufficiency of evidence).

Instantly, Appellant's contention the Complainant's testimony was inconsistent and that the jury should have credited Rodriguez's testimony rather than hers is not a proper challenge to the sufficiency of the evidence; rather, this issue implicates the weight of the evidence. *See W.H.M.*, *supra*; *Wilson*, *supra*; *Gaskins*, *supra*. Because Appellant did not preserve a challenge to the weight of the evidence before the trial court, he waived that claim on appeal. *See* Pa.R.Crim.P. 607(A) (explaining claim that verdict is against weight of evidence shall be raised with trial judge in motion for new trial orally before sentencing, by written motion before sentencing, or in post-

sentence motion); **Wilson, supra** (explaining challenge to weight of evidence is waived if not raised before trial court).

Further, even assuming, arguendo, we could construe Appellant's issue as a challenge to the sufficiency of the evidence, it would not merit relief. When examining a challenge to the sufficiency of evidence, this Court employs a well-settled standard of review:

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying [the above] test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the [trier] of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

**Commonwealth v. Hansley**, 24 A.3d 410, 416 (Pa.Super. 2011), *appeal denied*, 613 Pa. 642, 32 A.3d 1275 (2011) (quoting **Commonwealth v. Jones**, 874 A.2d 108, 120-21 (Pa.Super. 2005)).

The Pennsylvania Crimes Code defines simple assault as follows:

> **§ 2701. Simple Assault**
>
> **(a) Offense defined.**—Except as provided under section 2702 (relating to aggravated assault), a person is guilty of assault if he:

- 10 -

(1) attempts to cause or intentionally, knowingly or recklessly causes bodily injury to another;

(2) negligently causes bodily injury to another with a deadly weapon;

(3) attempts by physical menace to put another in fear of imminent serious bodily injury; or

(4) conceals or attempts to conceal a hypodermic needle on his person and intentionally or knowingly penetrates a law enforcement officer or an officer or an employee of a correctional institution, county jail or prison, detention facility or mental hospital during the course of an arrest or any search of the person.

* * *

18 Pa.C.S.A § 2701(a). PIC requires:

**§ 907. Possessing instruments of crime**

**(a) Criminal instruments generally.--**A person commits a misdemeanor of the first degree if he possesses any instrument of crime with intent to employ it criminally.

* * *

18 Pa.C.S.A. § 907(a). An "instrument of crime" is defined, in pertinent part,

as "[a]nything specially made or specially adapted for criminal use." 18

Pa.C.S.A. § 907(d).

When determining the evidence was sufficient to find Appellant guilty of

Simple Assault and PIC, the trial court reasoned as follows:

Here, [Appellant] brandished a twelve-inch kitchen knife, and pulled Complainant by her hair, causing her to fall and hurt her knee. N.T. 1/2/19, at 18, 31 and 70.[2] Appellant's language communicated his intent to at least place Complainant in fear of imminent serious bodily injury, as well as his complete disregard for the law or safety of others. N.T. 2/1/19 at 14 and 20.

---

[2] The Commonwealth presented a photograph of the Complainant's injured knee as Commonwealth Exhibit 2.

- 11 -

[Appellant's] language together with actually injuring Complainant established that [Appellant] had a minimum *mens rea* of negligence, which is sufficient to find [Appellant] guilty of Simple Assault and PIC.

Trial Court Opinion, filed 12/20/19, at 7.

Appellant's arguments to the contrary, the trial court relied upon both the Complainant's words as well as Appellant's own hostile statements heard by both Rodriguez and the Complainant in reaching its verdict. Upon our review of the trial testimony, we agree with the trial court's summary thereof which, when read in its totality, establishes, at a minimum, that Appellant recklessly caused the Complainant bodily injury. It also shows that Appellant placed the Complainant in fear of serious bodily injury when during an intense argument he waved a large kitchen knife in her face which, when utilized in such a manner, constitutes an instrument of crime. 18 Pa.C.S.A. § 907(d). In fact, Appellant admits in his appellate brief that he "pointed a knife towards her[.]" Brief for Appellant at 8.

Furthermore, in **In re J.B**. *supra*, our Supreme Court found that the evidence had been insufficient to establish a juvenile's identity as the person who killed the victim and her unborn child, as required for his adjudication as delinquent. The court held:

In sum, then, all of the Commonwealth's forensic and eyewitness testimony, and all reasonable inferences derived therefrom, viewed in a light most favorable to it, was, at best, in equipoise, as it was equally consistent with two possibilities: first, that a person or persons unknown entered the house in which J.B.'s stepmother was sleeping and shot her to death after J.B. and his sister had left for school on the morning of February 20,

- 12 -

2009; second, the Commonwealth's theory that, after J.B.'s father left for work, J.B., in full view of J.H., walked upstairs and retrieved a .20 gauge shotgun from his bedroom, walked back downstairs, retrieved a shotgun shell from a box of shells located in an armoire in the victim's bedroom on which the television set she was watching was located, shot the victim in the back of the head as she lay on the bed facing that television, took the shotgun back upstairs and returned it to its former position — after wiping it clean of any physical evidence caused by the shooting — then caught the school bus with J.H., and went to school as if it were any other normal morning. The Commonwealth's evidence was, therefore, insufficient as a matter of law to overcome Appellant's presumption of innocence, and the juvenile court's adjudication of his delinquency for these serious crimes must be reversed. *See **Woong Knee New**,* 47 A.2d at 468 ("When a party on whom rests the burden of proof in either a criminal or a civil case, offers evidence consistent with two opposing propositions, he proves neither."); ***Tribble***, 467 A.2d at 1132 ("[S]ince the testimony presented by the Commonwealth to establish appellant's guilt is at least equally consistent with appellant's innocence, there is insufficient evidence to sustain appellant's conviction.").

***In Interest of J.B.***, 647 Pa. 339, 390–91, 189 A.3d 390, 421–22 (2018).

As the above excerpt evinces, in ***In re J.B.***, the reliability of the forensic evidence, which was essential to convict J.B., was in question. To the contrary, Appellant's argument herein is essentially that the trial testimony of Rodriquez and the Complainant, the latter of which was at times inconsistent, was diametrically opposed and, therefore, insufficient as a matter of law for a conviction. However, it is well established that:

Existence of inconsistencies in the testimony of a witness does not alone render evidence insufficient to support a verdict. **Commonwealth v. Long**, 425 Pa.Super. 170, 624 A.2d 200, 208 (1993), *appeal denied,* 535 Pa. 645, 633 A.2d 150 (1993) (internal citation omitted). ***See also Commonwealth v. Pierce***, 446 Pa. 479, 288 A.2d 807 (1972) (holding where inconsistencies of each witness's testimony were brought out in cross-

examination and fairly presented to jury, mere conflict in testimony does not render evidence insufficient).

*Commonwealth v. Lyons*, 833 A.2d 245, 258 (Pa.Super. 2003).

Viewed in a light most favorable to the Commonwealth as the verdict-winner, we agree with the trial court's finding that the evidence was sufficient to convict Appellant of simple assault and PIC. *See* 18 Pa.C.S.A. §§ 2701(a), 907(a); *Hansley, supra*. By Appellant's own admission, the evidence was as consistent with his guilt as with his innocence of the charged crimes.

The minor inconsistencies in the testimonial evidence about which Appellant argues were for the trial court to resolove and do not dictate a finding the evidence was not sufficient for conviction. From the testimony presented at trial, the trial court, as the finder of fact, could reasonably conclude that Appellant's language and aggressive behavior while wielding a kitchen knife placed the Complainant in fear of serious bodily injury. *See Smith*, 97 A.3d at 790 (explaining that the finder of fact is free to believe all, part or none of the evidence). Accordingly, Appellant's sufficiency challenge fails, and we affirm his judgment of sentence.

Judgment of Sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 3/11/21