J-A16033-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| KRISTIAN CHARLES BURNS | : | |
| | : | |
| Appellant | : | No. 1356 MDA 2020 |

Appeal from the Judgment of Sentence Entered June 1, 2020
In the Court of Common Pleas of Union County Criminal Division at
No(s):  CP-60-CR-0000074-2019

BEFORE:   KUNSELMAN, J., McCAFFERY, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY STEVENS, P.J.E.:            **FILED SEPTEMBER 29, 2021**

Appellant, Kristian Charles Burns, appeals from the judgment of sentence entered in the Court of Common Pleas of Union County after a jury convicted him of aggravated assault by vehicle while driving under the influence ("DUI"), aggravated assault by vehicle, DUI—highest rate, accidents involving death or injury while not licensed, and driving while suspended DUI-related with alcohol in his system.[1]  Herein, Appellant challenges a pre-trial ruling of the court, the discretionary aspects of his sentence, and the weight and sufficiency of the evidence.  After careful review, we affirm.

On May 12, 2018, Appellant encountered two old high school friends, Kara Eberle and Tessy Aikey, at a bar in Milton, Pa. and spent the remainder of the night consuming alcohol, marijuana, and cocaine.  N.T., 3/2/20, at 45,

---

[*] Former Justice specially assigned to the Superior Court.
[1] 75 Pa.C.S.A. §§ 3735.1, 3732.1, 3802(c), 3742.1(a), and 1543.

48-51, 68-69. In the early morning hours, Eberle, who had volunteered to be the designated driver for Aikey earlier that evening, agreed to drive Appellant home as well. N.T. at 47. After she dropped off Aikey, she continued toward the rural home of Appellant's father, but she was having some difficulty because she did not know the way. N.T. at 52-54. According to Eberle, she accepted Appellant's offer to take over, and Appellant eventually crashed the car into a tree at a high rate of speed causing the two to be ejected from the car and sustain serious injury. N.T. at 56-59.

Appellant was charged as indicated *supra*, and a pivotal issue at the jury trial regarded the identity of the driver at the time of the accident. The Commonwealth presented evidence intended to prove Appellant caused the accident by reckless operation of the vehicle, as Appellant had turned down a "loose gravel" road with a posted 40 mile per hour speed limit and accelerated to between 74 and 80 miles per hour in disregard of Eberle's panicked pleas for him to slow down. N.T. at 56-57, 147. Eberle claimed she was so afraid at that moment that she undid her seatbelt and prepared to jump from the vehicle. N.T. at 56.

The Commonwealth also presented both DNA test results of blood recovered from inside the vehicle and expert testimony on accident reconstruction analysis to establish Appellant's location in the driver's seat at the time of the accident. N.T. at 145-146, 155. Additionally, post-accident BAC results and toxicology screenings were offered to corroborate Eberle's testimony that Appellant drove recklessly and without due regard for the

dangerous conditions. Specifically, Appellant's BAC of .284% and positive results for marijuana and cocaine in his toxicology screening provided evidence of his impairment, while, in contrast, Eberle's BAC was .074%, below the legal limit. N.T. at 67-69.

In his defense, Appellant presented an expert witness, Justin P. Schorr, Ph.D., whose accident reconstruction analysis led him to offer his opinion to a reasonable degree of professional certainty that Eberle was the driver.

A jury found Appellant guilty of aggravated assault by vehicle while DUI ("AA-DUI"), aggravated assault by vehicle, DUI—highest rate, accidents involving death or injury while not licensed, and driving while suspended DUI-related with alcohol in his system.

The trial court imposed an aggregate sentence of 54 months plus 90 days to 132 months' incarceration, which comprised a standard range sentence of 54 to 120 months for AA-DUI, a concurrent sentence of 16 to 84 months for accidents involving death or injury while not licensed, and a consecutive sentence of 90 days to 12 months for driving while suspended while greater than .02% BAC. This timely appeal followed.

Appellant presents the following questions for our consideration:

1. The trial court denied Burns' motion to continue on the eve of trial. The continuance request was based on the Commonwealth's providing new discovery on the Friday before trial was to begin on Monday. Due to the late proved discovery, Burns did not have adequate time to prepare a defense. Did the judge abuse his discretion by failing to grant Burns' motion to continue?

2. The trial court sentenced Burns to an aggregate sentence of 57 months to 132 months. Based on Burns['] individual circumstances in light of his own serious injury and required medical treatment, this sentence is akin to cruel and unusual punishment. Did the court err in imposing an excessive sentence?

3. Burns was found guilty of aggravated assault by vehicle while DUI. To convict a driver of this offense, the Commonwealth must prove that Burns' intoxication was the direct and proximate cause of the accident which resulted in serious bodily injury to the victim. Here there was no evidence presented that the Burns intoxication was the direct and proximate cause of the injury. Did the Commonwealth fail to present sufficient evidence to find Burns guilty?

4. Burns was found guilty of aggravate[d] assault while DUI, aggravated assault by vehicle, accident involving death or injury, DUI impaired ability, and Driving While Suspended with a greater than .02% BAC. There was credible evidence presented by a qualified expert witness that Burns could not have been the driver of the car. Was the verdict as to each of the above-listed charges against the weight of the evidence?

Appellant's brief at 6-7.

Appellant first asserts that the trial court erroneously denied his Friday, February 28, 2020, written motion for a continuance to permit adequate review of approximately 95 crash scene photographs that the Commonwealth had just turned over to the defense a day earlier. The motion asserted that with an anticipated two-day trial scheduled to begin on Monday morning, March 2, 2020, there was insufficient time for the defense team and its collision reconstruction expert to review properly the newly provided discovery. He argues the photographs were essential to the expert's ability

- 4 -

to evaluate the scene and draw a conclusion as to who was driving at the time of the accident.

Our Supreme Court has held that "[t]he grant or denial of a motion for a continuance is within the sound discretion of the trial court and will be reversed only upon a showing of an abuse of discretion." *Commonwealth v. Brooks*, 104 A.3d 466, 469 (Pa. 2014). An abuse of discretion is not merely an error of judgment; rather, discretion is abused when "the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias, or ill-will, as shown by the evidence or the record." *Id.* (citation omitted).

"A bald allegation of an insufficient amount of time to prepare will not provide a basis for reversal of the denial of a continuance motion." *Commonwealth v. Ross*, 57 A.3d 85, 91 (Pa. Super. 2012). "Instead, an appellant must be able to show specifically in what manner he was unable to prepare his defense or how he would have prepared differently had he been given more time." *Id.* (quotation omitted).

The trial court's March 2, 2020, written order denying Appellant's motion for a continuance specified "the motion is denied at this time, *without prejudice to renew*." Order, 2/28/20 (emphasis added). The opportunity to renew tracked both an earlier in-chambers conference on the motion and the court's subsequent formal announcement from the bench "not to grant the motion at this time at least." N.T., 2/2/20, at 5.

Prior to entering its order, the court asked defense counsel if he wanted "to add anything before I do that or qualify what you want to have happen?" Defense counsel responded, "I don't think it's necessary, Your Honor. I may renew the motion later on in the day; but at this point, I certainly respect the Judge's – Your Honor's ruling." *Id*.

During a break in Day 1 testimony, defense counsel updated the court regarding the prospect of a renewed motion:

> **Defense counsel**: For what it's worth, Your Honor, just as sort of a housecleaning matter; having conferred with my expert, I do not believe that I will be resuming my motion for continuance. I think we're okay in proceeding.

N.T. at 118. Accordingly, defense expert Justin Schorr, Ph.D., testified on the following day.

In its Pa.R.A.P. 1925 Opinion, the trial court explains that it entered the order without prejudice to renew because "we wanted to determine if in fact the late receipt of discovery compromised or prejudiced the defense expert's presentation since the motion was speculative as to whether the expert might be incapable of reviewing the materials over the weekend before the start of trial." TCO, 11/12/2020, at 2. Given both counsel's Monday notice to the court that it would not renew its motion and the expert's Tuesday testimony evaluating the photographs without complaint of insufficient time to prepare, the trial court found that Appellant waived his right to raise this claim on appeal. We agree.

By indicating at Monday's pretrial conference its willingness to consider a renewed motion as the time for the expert's Tuesday testimony drew closer, which would allow better assessment by all of whether prior Thursday's discovery of the photographs provided adequate time for the expert to prepare, the court stopped short of definitively ruling on the motion. It was only when counsel later advised the court that after conferring with his expert there was no need to renew and that he would be "okay in proceeding" that the issue was settled, as counsel effectively withdrew his motion at such time. We, thus, conclude waiver applies under the particular facts of the case. ***Cf. Blumer v. Ford Motor Co.***, 20 A.3d 1222, 1232 (Pa.Super. 2011) ("Consistent with . . . F.R.E. 103, a motion in *limine* may preserve an objection for appeal without any need to renew the objection at trial, but only if the trial court clearly and definitively rules on the motion. . . . [***See***] F.R.E. 103, *Advisory Committee Notes—2000 Amendments* ('[W]hen the trial court appears to have reserved its ruling *or to have indicated that the ruling is provisional*, it makes sense to require the party to bring the issue to the court's attention subsequently.')") (emphasis added).[2]

In Appellant's second issue, Appellant challenges the court's exercise of sentencing discretion when it declared an aggravated range sentence for the charge of AA-DUI was warranted because this was Appellant's fourth DUI

---

[2] In the alternative, even if we did not find waiver, we discern no merit to Appellant's claim, as Dr. Schorr testified on the following day without claiming any impairment to his ability to evaluate the photographs.

conviction.[3]    Appellant maintains the court therefore double-counted Appellant's prior record score, which is already contemplated in guideline calculations.

It is not disputed, however, that the court learned while reviewing post-sentence motions that because the presentence investigation report had contained miscalculated scores and, consequently, understated guideline ranges, the court's sentence actually fell within the standard guideline range when proper calculations were applied.  Rather than resentence Appellant to a new aggravated range sentence the court elected to retain what was now a standard range sentence.  Appellant, nevertheless, complains that the court abused its discretion in imposing a guideline sentence that focused on the seriousness of the offense and the injury to the victim rather than on Appellant's rehabilitative needs.

It is well-settled that "[c]hallenges to the discretionary aspects of sentencing do not entitle an appellant to review as of right." ***Commonwealth v. Derry***, 150 A.3d 987, 991 (Pa. Super. 2016) (citation omitted).  Rather, before reaching the merits of such claims, we must determine:

> (1)whether the appeal is timely; (2) whether Appellant preserved his issue; (3) whether Appellant's brief includes a concise statement of the reasons relied upon for allowance of appeal with

---

[3] Appellant concedes that despite his reference to his sentence being "akin to cruel and unusual punishment" he is not raising a challenge to the legality of his sentence but is, instead, asserting the court failed to consider that his injuries and need for rehabilitation would be best addressed at the county level within the context of a probationary sentence with extensive restrictions. ***See infra***.

respect to the discretionary aspects of sentence; and (4) whether the concise statement raises a substantial question that the sentence is appropriate under the sentencing code.

***Commonwealth v. Edwards***, 71 A.3d 323, 329-30 (Pa. Super. 2013) (citation omitted).

Appellant filed a timely notice of appeal, properly preserved his claim by filing a post-sentence motion for reconsideration, and includes a concise statement of the reasons relied upon for allowance of appeal under Pa.R.A.P. 2119(f). The only issue remaining then is whether he has raised a substantial question that the sentence is not appropriate under the Sentencing Code.

The determination of what constitutes a substantial question must be evaluated on a case-by-case basis. A substantial question exists only when the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process.

***Commonwealth v. Ali***, 197 A.3d 742, 760 (Pa. Super. 2018) (internal citations and quotations omitted).

The crux of Appellant's Rule 2119(f) Statement asserts as follows:

Appellant alleges that the trial court violated the sentencing guidelines by failing to consider his individual circumstances and imposing a sentence within the sentencing guidelines. The sentencing court erred by focusing [instead] solely on the seriousness of the offense and the injury to the victim rather than [on Appellant's] rehabilitative needs. Therefore, a substantial question has been raised failed to consider his individual circumstances and imposed a sentence.

Appellant's brief (Pa.R.A.P. 2119(f) Statement), at 20-21. Appellant raises a substantial question. ***See Commonwealth v. Caldwell***, 117 A.3d 763, 770 (Pa. Super. 2015) (*en banc*) (stating an excessive sentence claim, in

conjunction with an assertion that the court failed to consider mitigating factors, raises a substantial question).

Pertinent law is well-settled:

Sentencing is a matter vested in the sound discretion of the sentencing judge. The standard employed when reviewing the discretionary aspects of sentencing is very narrow. We may reverse only if the sentencing court abused its discretion or committed an error of law. A sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision. We must accord the sentencing court's decision great weight because it was in the best position to review the defendant's character, defiance or indifference, and the overall effect and nature of the crime.

*Commonwealth v. Nevels*, 203 A.3d 229, 247 (Pa. Super. 2019) (citation omitted).

The Sentencing Code provides that on appeal, this Court "shall vacate the sentence and remand the case to the sentencing court with instructions if it finds: ... the sentencing court sentenced within the sentencing guidelines but the case involves circumstances where the application of the guidelines would be clearly unreasonable[.]" 42 Pa.C.S.A. § 9781(c)(2). In determining whether a sentence is "clearly unreasonable,"

the appellate court must consider the defendant's background and characteristics as well as the particular circumstances of the offense involved, the trial court's opportunity to observe the defendant, the presentence investigation report, if any, the Sentencing Guidelines as promulgated by the Sentencing Commission, and the 'findings' upon which the trial court based its sentence.

- 10 -

*Commonwealth v. Coulverson*, 34 A.3d 135, 147 (Pa. Super. 2011) (citation omitted). *See also* 42 Pa.C.S.A. 9781(d). Furthermore, "[w]here, as here, the sentencing court has the benefit of reviewing a pre-sentence investigation report, we can assume the sentencing court was aware of relevant information regarding the defendant's character and weighed those considerations along with mitigating statutory factors." *Commonwealth v. Rhoades*, 8 A.3d 912, 919 (Pa. Super. 2010) (internal quotation marks and citation omitted).

After careful review, we find that the record belies Appellant's claim. Specifically, the court devoted the initial part of the sentencing hearing to the findings and recommendations contained in Appellant's presentence investigation report with respect to Appellant's rehabilitative needs:

> I have before me a Presentence Report concerning you dated May 21, 2020, prepared by Probation Officer Sean Madden; and I have reviewed it. I want to verify, we're going to talk about the contents here in a minute, but I want to make sure that you've had a chance to review it as well.
>
> . . .
>
> We have treatment assessment recommendations from Northumberland County's program, Behavioral Health and Intellectual Development Services Program; and they state, based on the information provided by [Appellant], he does not meet criteria for D&A [drug and alcohol] treatment at this time, which I think is kind of interesting.
>
> There is a CRN report prepared by our probation office which does identify you as a problem drinker and does say that – well, you are going to go to the Alcohol Highway Safety School anyway; and, of course, it recommends the alcohol assessment and drug assessment which we just referred to.

. . .

Then on the – just to follow further, the report also includes as an attachment a computerized assessment and referral system report concerning you which does an evaluation of your mental health and other issues. It's a screening tool only, identifies you as having two mental health problems and recommends seeking a professional mental health screening which did occur.

And going on through the report, it -- on page 7 you had a positive screen for two mental health conditions. Further assessment is needed to confirm whether he qualifies for these disorders. Referrals to the five closest resources for additional substance use and/or mental health screening are listed below. So, generally, since this is going to end up in state prison, we are hoping that perhaps the state prison system can address some of these issues.

Sentencing Hearing, 6/1/20, at 3-4.

The court also heard defense counsel zealously advocate for a probationary sentence with restrictive conditions not only because Appellant's serious injuries and his overall poor physical condition enhanced his vulnerability to Covid-19 exposures in prison, but also because Appellant's compliance with Union County Adult Probation had been excellent and the Probation Office's treatment program is a nationally recognized mentor team. N.T. at 12-13.

Therefore, the trial court had an opportunity to review and discuss openly the presentence report and to consider Appellant's argument for mitigation before it imposed its sentence.

Under these circumstances demonstrating the court's consideration of rehabilitative needs and mitigating circumstances, and in light of controlling decisional law, we decline to find Appellant's standard range sentence

unreasonable. ***See Commonwealth v. Corley***, 31 A.3d 293, 298 (Pa. Super. 2011) ("Where the sentencing court imposed a standard-range sentence with the benefit of a presentence report, we will not consider the sentence excessive.").

In addition, Appellant concedes his sentence is in the standard range, Appellant's Brief at 28, and "where a sentence is within the standard range of the guidelines, Pennsylvania law views the sentence as appropriate under the Sentencing Code." ***Commonwealth v. Moury***, 992 A.2d 162, 171 (Pa. Super. 2010).

In Appellant's third issue, he argues that the Commonwealth failed to present evidence sufficient to establish that his intoxication was the direct and proximate cause of his passenger's injuries. We disagree.

> We are mandated to frame our sufficiency review of Appellant's AA–DUI convictions by viewing "all the evidence admitted at trial in the light most favorable to the verdict winner," to determine whether "there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt." ***Commonwealth v. Nunn***, 947 A.2d 756, 759 (Pa.Super.2008) (internal citations omitted). "We may not weigh the evidence and substitute our judgment for the fact-finder ... [ ] [who] while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence." *Id.*

> The offense of AA–DUI is defined as follows.

> Any person who negligently causes serious bodily injury to another person as the result of a violation of section 3802 (relating to driving under influence of alcohol or controlled substance) and who is convicted of violating section 3802 commits a felony of the

second degree when the violation is the cause of the injury.

75 Pa.C.S. § 3735.1.

The offense at Section 3735.1 contains the element of criminal negligence, which is present where:

A person acts negligently with respect to a material element of an offense when he should be aware of a substantial and unjustifiable risk that the material element exists or will result from his conduct. The risk must be of such a nature and degree that the actor's failure to perceive it, considering the nature and intent of his conduct and the circumstances known to him, involves a gross deviation from the standard of care that a reasonable person would observe in the actor's situation.

18 Pa.C.S. § 302(b)(4). When presented with a challenge to the sufficiency of the evidence for criminal negligence, this Court has stated that we must determine "whether [a]ppellant's conduct amounted to a gross deviation from the standard of care:

In determining whether a person's actions constitute criminal negligence one must obviously consider the entire situation; and we hold that the determination whether those actions qualify as a "gross deviation" within the meaning of the statute, can depend upon the nature of the standard applicable to a given situation.

***Commonwealth v. Kutzel***, 64 A.3d 1114, 1119 (Pa. Super. 2013) (quoting

***Commonwealth v. Lobiondo***, 462 A.2d 662, 666 (Pa. 1983)). "While both

criminal negligence and recklessness involve 'gross' deviations from

reasonable conduct, recklessness includes conscious disregard of a risk

whereas criminal negligence is accompanied by lack of awareness of a risk."

***Commonwealth v. Heck***, 491 A.2d 212, 216 (Pa. Super. 1985). "A driver's

failure to act with reasonable care or attention in the circumstances is nothing

more than proof of his negligence as that term is used in the civil law." ***Id.*** at 216–17 (citation omitted).

Additionally, the following definitions are germane to our analysis:

> (a) **General rule.**—Conduct is the cause of a result when:
>
> (1) it is an antecedent but for which the result in question would not have occurred; and
>
> (2) the relationship between the conduct and result satisfies any additional causal requirements imposed by this title or by the law defining the offense.
>
> * * *
>
> (c) **Divergence between probable and actual result.**—When recklessly or negligently causing a particular result is an element of an offense, the element is not established if the actual result is not within the risk of which the actor is aware or, in the case of negligence, of which he should be aware unless:
>
> (1) the actual result differs from the probable result only in the respect that a different person or different property is injured or affected or that the probable injury or harm would have been more serious or more extensive than that caused; or
>
> (2) the actual result involves the same kind of injury or harm as the probable result and is not too remote or accidental in its occurrence to have a bearing on the liability of the actor or on the gravity of his offense.

18 Pa.C.S. § 303(a); (c).

In ***Nunn***, we reiterated:

To establish criminal causation, the Commonwealth must prove that the defendant's conduct was so directly and substantially linked to the actual result as to give rise to the imposition of criminal liability. *Commonwealth v. Long*, 425 Pa.Super. 170, 624 A.2d 200, 203–204 (1993), *appeal denied*, 535 Pa. 645, 633 A.2d 150 (1993) (*citing Commonwealth v. Rementer*, 410 Pa.Super. 9, 598 A.2d 1300, 1304 (1991), *appeal denied*, 533 Pa. 599, 617 A.2d 1273 (1992)).

In *Rementer*, we set forth a two-part test for determining criminal causation. First, the defendant's conduct must be an antecedent, but for which the result in question would not have occurred. *Rementer*, 598 A.2d at 1305; 18 Pa.C.S.A. § 303(a)(1). A victim's death cannot be entirely attributable to other factors; rather, there must exist a "causal connection between the conduct and the result of conduct; and causal connection requires something more than mere coincidence as to time and place." *Rementer*, 598 A.2d at 1305, n. 3 (*quoting* LaFave and Scott, *Substantive Criminal Law*, Vol. 1, Ch. 3., at 391–392 (1986)). Second, the results of the defendant's actions cannot be so extraordinarily remote or attenuated that it would be unfair to hold the defendant criminally responsible. *Rementer*, 598 A.2d at 1305.

As to the first part of the test, the defendant's conduct need not be the only cause of the victim's death in order to establish a causal connection. *Rementer*, 598 A.2d at 1305. "Criminal responsibility may be properly assessed against an individual whose conduct was a direct and substantial factor in producing the death even though other factors combined with that conduct to achieve the result." *Long*, 624 A.2d at 203 (*citing Commonwealth v. Skufca*, 457 Pa. 124, 321 A.2d 889 (1974), *appeal dismissed,* 419 U.S. 1028, 95 S.Ct. 510, 42 L.Ed.2d 304 (1974)). The second part of the test is satisfied when the victim's death is the natural or foreseeable consequence of the defendant's actions. *Id. (citing Rementer* and *Commonwealth*

*v. Paquette*, 451 Pa. 250, 301 A.2d 837 (1973)). "Where the fatal result was an unnatural or obscure consequence of the defendant's actions, justice would prevent us from allowing the result to have an impact upon a finding of the defendant's guilt." *Id.* at 204, 624 A.2d 200 (*citing* **Rementer**, 598 A.2d at 1306–1307).

*Nunn*, 947 A.2d at 760.

[I]n **Commonwealth v. Fabian**, 60 A.3d 146 (Pa.Super. 2013), we expressed:

In seeking to define the requirement that a criminal defendant's conduct be a direct factor in the death of another, the courts of this Commonwealth have held that 'so long as the defendant's conduct started the chain of causation which led to the victim's death, criminal responsibility ... may be properly found.'

**Fabian**, **supra**, at 152 **citing Commonwealth v. McCloskey**, 835 A.2d 801, 808 (Pa.Super. 2003).

**Commonwealth v. Spotti**, 94 A.3d 367, 374–76 (Pa.Super. 2014)

In **Commonwealth v. Eichler**, 133 A.3d 775 (Pa. Super. 2016), the appellant was convicted of, *inter alia*, AA-DUI and this Court determined there was sufficient evidence for the conviction. **Id.** at 791 (citation omitted). Eichler was operating his vehicle when he swerved off the road, struck the victim who was in a motorized wheelchair, and left the scene. **Id.** at 789, 790.

An investigating police sergeant went to Eichler's home and observed damage to the right front corner and passenger side door of the appellant's vehicle. **Id.** at 790. Upon speaking to Eichler, the sergeant noticed he had bloodshot eyes, was slurring his speech, and appeared to be highly

intoxicated. *Id*. The sergeant asked Eichler why he left the scene of the accident, and he responded that he had been drinking. *Id.* at 790–91. Eichler was arrested and taken to a hospital where his BAC was found to be .30%. *Id.* at 791.

At trial, a Pennsylvania state trooper who had conducted accident reconstruction testified that the accident had occurred at nighttime, there were no adverse weather or road conditions at the time of the collision, and that the roadway was dry. *Id.* at 788. The trooper determined that based on the conditions and the appellant's speed, a "reasonably sober attentive driver would be able to ascertain that there was a threat in his lane, regardless of what it was … and a sober, attentive driver would have been able to, at least, slow to a reasonable speed and … steer out around the wheelchair, if not stop altogether." *Id.* at 789. Thus, this Court concluded that there was sufficient evidence of criminal negligence for the jury to have convicted the appellant of aggravated assault by vehicle while DUI. *Id.* at 792.

We find the case at bar analogous to *Eichler*. Here, Kara Eberle testified that she witnessed Appellant drinking at four bars that night, and Appellant's post-accident BAC results were .28% and a toxicity screen showed the presence of marijuana and cocaine in his blood.

Moreover, according to Eberle, the Appellant began to drive "very, very, very rapidly" on a "loose gravel road," where "you could feel the car didn't have good traction." N.T. at 56. Eberle noted further that it was very dark and there was "a little bit of fog" and some precipitation that she described as

a "spritzing." N.T. at 78-79. She testified that she asked him quite hysterically to "'please slow down.' My car was brand new. I said, 'You know, you're going way too fast.' And he did, he did slow down." *Id*.

Within a few minutes, however, he was going faster again, which was when Eberle unbuckled her belt and considered jumping from the car until the very high speed deterred her. She "was just begging him to 'please stop, stop the car. I'm a single mom.' I asked him, 'let me out.' And he wasn't phased by my requests at all. He just, just stared out the windshield like I wasn't – like I wasn't even in there." N.T. at 56-57. Moments later, they crashed.

The Commonwealth also presented the testimony of accident reconstruction expert, Pennsylvania State Trooper Gary Beadle, who explained Eberle's vehicle was traveling between 74 miles per hour and 80 miles per hour, in a 40 mile per hour zone, five seconds before impact. N.T. at 147. The vehicle "failed to negotiate a left curve and struck a speed limit sign" before striking several trees causing both passengers to be thrown from the vehicle. N.T. at 147-48. Notably, Trooper Beadle testified that there were no braking marks at the scene, and an analysis of the vehicle's module indicated the brake pedal wasn't pressed until approximately one second before impact. N.T. at 173.

The jury thus received the testimony of Eberle—whose post-accident BAC level was below the legal limit—explaining that she was in such fear of the high speed of travel combined with the reduced visibility and sensation of poor traction that she hysterically begged Appellant to slow down. She was so

dismayed at the prospect of a serious accident that she removed her seat belt and prepared to jump from the speeding vehicle despite appreciating the great risk associated with that option.

Eberle said that Appellant, in contrast, seemed insensible to or uncaring about the grave danger he was creating. Though he momentarily honored her distressed request to slow down, he soon resumed driving at a frighteningly high speed without any outward sign of regard for either the posted speed limit, the challenging conditions, or her crying plea for reason.

This testimony, combined with Trooper Beadle's reconstruction testimony identifying the vehicle's 74-80 mile per hour speed of travel and the lack of braking as the late model car failed to negotiate a curve allowed the jury to conclude that a sober, attentive driver would have appreciated the circumstances, slowed to a reasonable speed, and managed the curve appropriately.

Thus, as we did in *Eichler*, we conclude there was sufficient evidence of criminal negligence for the jury to have convicted the appellant of AA-DUI. *See also Commonwealth v. Ketterer*, 725 A.2d 801, 804 (Pa.Super. 1999) (sustaining conviction for AA-DUI for accident while traveling 65 m.p.h. in a 45 m.p.h. zone; speeding was particularly negligent because "minimal visibility caused by severe weather conditions" led other drivers to travel at approximately 25 m.p.h.).

In Appellant's final issue, Appellant raises a challenge to the weight of the evidence with respect to the identity of the driver at the time of the

accident. Our standard of review for a weight of the evidence issue is well-settled:

> We adhere to the following standard of review:
>
> [A]ppellate review of a weight claim is a review of the [trial court's] exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence. Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.
>
> We stress that if there is any support in the record for the trial court's decision to deny the appellant's motion for a new trial based on weight of the evidence, then we must affirm. An appellant is not entitled to a new trial where the evidence presented was conflicting and the fact-finder could have decided in favor of either party.

*Corvin v. Tihansky*, 184 A.3d 986, 992–993 (Pa. Super. 2018) (internal citations omitted).

Appellant contends the court erred in concluding the jury's verdict of guilty on the charge of AA-DUI did not shock the conscience, as the verdict necessarily relied on finding either Eberle credible or that the Commonwealth's experts' combined analyses proved identity beyond a reasonable doubt. Not only were Eberle's and the experts' testimonies insufficient proof, whether viewed independently or in conjunction with one another, Appellant argues, they were disproved by the testimony of defense expert Dr. Schorr, who

testified that in his expert opinion Eberle was driving at the time of the accident.

Specifically, Appellant contends that Eberle's testimony is unreliable and contradictory because it:

> shocks one's sense of justice to believe that this woman, a single mom with a good job and an advanced degree, who was the designated driver that night, would allow this man, who[m] she hadn't seen in many years and who was intoxicated, to drive her brand-new car simply because he knew the way better than she did. Further, her bias and motivation to lie is evident. Upon being ejected from the vehicle, [Appellant] was outside the passenger door of the car and was nonresponsive. Eberle's brand new car was totaled and she was scared that she had just crashed and possibly killed someone. She needed not to be the driver in order to protect herself, and her child.

Appellant's brief, at 40.

Initially, we observe that the present weight of the evidence claim differs from the weight claim raised in Appellant's post-sentence motion, which asked, instead, "Was the verdict against the weight of the evidence in that there was no way to establish that the accident at issue occurred as a result of substance abuse, erratic driving or some combination and thus any conclusions drawn therefrom were impermissibly speculative?" Motion for Post-Sentence Relief, 6/11/20, at 2. Accordingly, we find the present weight of the evidence claim waived.[4]

---

[4] Appellant's post-sentence motion also raised a challenge to the sufficiency of the evidence in which he claimed the "verdict was not supported by sufficient evidence [because] even when reviewing the facts in the light most favorable to the prosecution, the expert witness proffered by the defense

*(Footnote Continued Next Page)*

Even if we were to find this claim preserved and reviewable, we would find it fails to disprove Eberle's testimony as Appellant claims. At trial, defense counsel attempted to impeach her credibility, first on cross-examination and then through Dr. Schorr's testimony, but it does not shock one's sense of justice that the jury believed her testimony that she switched seats with Appellant, whom she said displayed unimpaired speech and movement, because she was having trouble navigating the dark and unfamiliar road to Appellant's father's rural home.

Nor was Dr. Schorr's testimony dispositive, as he opined instead in terms of possibilities and probabilities. He testified that unbuckled passengers often fly chaotically inside a cabin upon impact while traveling at high speeds, and Appellant and Eberle may have crisscrossed in the cabin, which could have

---

showed it was impossible that [Appellant] was the driver while simultaneously explaining all alternatives offered by the prosecution." Motion for Post-Sentence Relief at 1. He now attempts to rebrand this challenge as one directed to the weight of the evidence. By questioning the validity of the verdict, however, Appellant was, as he claimed in his post-sentence motion, challenging the sufficiency of the evidence. Such arguments are improper in the weight context. *See Commonwealth v. Moreno,* 14 A.3d 133, 136 (Pa. Super. 2011) ("A motion for new trial on grounds that the verdict is contrary to the weight of the evidence concedes that there is sufficient evidence to sustain the verdict but contends, nevertheless, that the verdict is against the weight of the evidence.") (quotation marks and citation omitted). The only real weight argument is that Dr. Schorr disagreed with Trooper Beadle's conclusions. Obviously, it cannot be that the existence of competing expert opinions precludes a verdict, which is what Appellant contended both in his motion and in the present appeal. This challenge as raised in Appellant's post-sentence motion, therefore, may not be viewed as one directed to the weight of the evidence.

accounted for Appellant's blood stain on the driver's side visor. N.T., 3/3/20, at 47. He also conceded that Appellant's right hip injury could be consistent with his having collided with the gear shift from the driver's seat position just as Eberle's could have occurred from impacting the vehicle's passenger side pillar. N.T., 3/3/20, at 81-82.

For these reasons, even if Appellant's final claim were not waived, we would find it meritless, as it would not shock the conscience for the trial court to have understood the jury's verdict as one which credited Eberle's testimony while viewing the conflicting expert testimony as either inconclusive or in favor of the Commonwealth.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/29/2021